Referred to in 9 S. & S. 429 ; 11 S. & R. 428.

# Lessee of William Wilson *against* Michael Rhoades.

A plaintiff under special circumstances, may recover in ejectment, though the survey returned excludes the lands in question, if the survey of the lands be found by the jury.

EJECTMENT for lands in Mifflin county.   This cause was tried at Lewistown in the Circuit Court, on the 26th May 1802, before YEATES and BRACKENRIDGE, Justices, when the jury found a verdict for the plaintiff.

A motion for a new trial was made, but not argued ; and it was afterwards agreed by the counsel, that an entry should be made on the record of the motion being overruled, and judgment entered for the plaintiff, in order to bring an appeal thereon to this court, without prejudice to either party.

YEATES, J. reported the evidence given at the trial substantially as follows :

Both plaintiff and defendant claimed under equitable, as well as legal titles.   The defendant holds as a tenant under John M'Veagh.

It appeared, that Charles Stewart, in 1755, cut some few rails on the 72 acres in dispute, and made consentable lines with two of the neighbours, but never resided on the land, nor put in any grain.

In 1761, one Daniel Netherey built a cabin on the land, hung *a door on it, but had no chimney.   He cleared between two and four acres of land, ploughed it and planted the same with corn.   He resided in his cabin.   Stewart attempted        [*39

* Harg. Co. Lit. 352 a.   *Vide* 1 Ridg. jr. Parl. Cas. 25, 102.   When a record is an estoppel to the party, it must be direct and in point to the fact, which the party is estopped from proving contrary to the record, concerning that fact.

to open a log for rails in 1763, but was driven off by the people, who assisted Netherey in making rails. Netherey continued to live on the land till about the harvest time of 1763, and then fled with the other inhabitants, from the Indian ravages.

On the 20th May 1765, Thomas Burney entered up a judgment against Netherey for 15l. in Cumberland county, and a *fi. fa.* being issued, returnable to January term 1766, the improvement was levied on, and condemned by an inquest.

On the 7th August 1765, Burney takes out a warrant for 300 acres including his improvement, adjoining Andrew Brandon, Adam Carson, James Gally, and Daniel Netherey. Interest to commence from 1st March 1758.

On the 10th April 1765, a survey was made hereon, by William Maclay, containing $192\frac{4}{10}$ acres, the draft whereof excluded the 72 acres in question ; but it did not appear when the same was returned into the office of the surveyor general.

William Maclay, esq. swore, that when he made the survey in 1766 for Burney, and came to the improvement said to be Netherey's, which was then vacant, he was requested by Burney to run such lines, as that it might be included in the survey, saying, he expected to buy it. He accordingly run such courses, as would enable him to make a return of the improvement provisionally on Burney's warrant ; but Burney was to satisfy him about his having made the purchase, before the survey was returned, which he neglected to do.

A *venditioni exponas* issued in the suit of Burney against Netherey, returnable to July term 1766, upon which the lands and improvements were sold to Burney for 7l. 10s.—and on the 22d January 1767, the sheriff, John Holmes, esq. executed to him a deed for the same, which was duly acknowledged in open court.

Sometime after, but the precise year did not appear, Burney put Anthony Saltsman a tenant on the land, who lived there two years. Joseph Howard, who claimed the land, pressed him to give the possession up to him. On his refusal, Howard ordered his negro to throw the roof off the cabin ; and afterwards, in the absence of the wife of Saltsman, he obtained the possession, which has continued in him and M'Veagh, and their tenants, ever since ; and about thirty acres are now cleared land.

On the 7th August 1770, Burney entered a caveat against Howard's survey, alleging a prior warrant and survey. The division thereon did not take place till 12th January 1791, many *years after Burney's death, when the Board of Property awarded the 72 acres to Howard.

*40]

In October term 1782, judgment was obtained against the executors of Thomas Burney, which being afterwards revived by *scire facias*, the whole tract was levied on, sold and duly conveyed by Thomas Buchannan, sheriff, to William Brown, on the 24th July 1790, in consideration of 85l.—who afterwards con-

[Wilson's Lessee v. Rhoades.]

veyed the same to the lessor of the plaintiff on the 1st August 1794, in consideration of 250l.

The defendant's legal title was founded on a warrant to Joseph Howard, for 72 acres, dated 7th June 1770, adjoining his land bought of Thomas Mitchell, and lands of Thomas Burney, including an improvement made by Charles Stewart ; interest to commence from 1st March 1758. On the 8th June 1770, 9l. was paid to the receiver general ; on the 14th of the same month,        was paid to William Maclay for the survey : and on the 2d July following, a survey was made by Maclay of 72⅞ acres, the lands in dispute.

On the 29th May 1792, Howard conveyed to John M'Veagh, the defendant's landlord.

No evidence was given of Howard's purchase of the claim of Stewart by improvement ; and a patent to M'Veagh, for adjacent lands, dated 11th February 1788, called for these 72⅞ acres as the lands of Burney.

A question was made at the trial, whether the sheriff's sale of the lands of Burney, on the judgment against his executors, was vitiated by the defect of an inquisition, condemning the property ; but the court thought there was no weight in that objection. They were, however, divided, as to the pretensions of the parties to the equitable title by improvement ; YEATES thinking the claim of Netherey to be much preferable to that of Stewart, and BRACKENRIDGE, J. asserting a contrary opinion. But the great doubt was, whether such a survey was made for Burney, as was within the limitation act of 26th March 1785.

Messrs. Ingersoll and Sergeant, on behalf of the defendant, contended, that it appeared from the report, that Stewart's title by improvement was elder and better than Netherey's ; it commenced in 1755, and Stewart was forcibly expelled from the land in 1763. Burney's warrant and survey returned, evidently exclude the 72 acres, and it is even dubious whether they were included by the lines run by the surveyor, though he was allowed in his testimony to explain and indeed to contradict his official return. But if the 72 acres should be supposed to have been surveyed in 1766, still, as Maclay has sworn, it was but provi-*sionally run, and as a mere matter of indulgence. It was against the duty of the surveyor to strip a man of his [*41 improvement, and Burney engaged to give him notice when he effected his intended purchase. The condition was not performed on the part of Burney, which alone could effectuate the lines run on the ground ; and if a loss arises therefrom, it must be imputed to his own negligence. Maclay was his agent. His act in returning the survey is conclusive on his principal, where there has been no fraud or even mistake. The limitation act, (2 St. Laws 282, § 5) pre-supposes a right in the party who commences his ejectment, and cuts off all recovery, unless the provisions of the act be complied with. Here there has been no

survey made for Burney, within the true intent of the legislature. The law requires a survey to have been actually completed; an act already done, not to be done at a future day. The caveat has no legal effect; it operates as a mere claim, like the bringing an ejectment; it is not equivalent to the act of an authorized surveyor, giving possession of the premises, and sanctified by the lords of the fee. Upon the whole, it is apprehended, if there is reasonable ground to presume, that justice has not been done by the verdict, the court will grant a new trial, and not suffer the possession to be changed.

. Mr. Duncan for the plaintiff, insisted, that the court would not grant a new trial, if the verdict of the jury was according to the equity and justice of the case. It is true, the members of the court differed in opinion on the trial, as to who had the superior equitable right. But what kind of title can be derived from making a few rails on the land in 1755, unaccompanied by a personal settlement? What avails an intention·to make an improvement, unless that intention is really carried into execution? It is true, Stewart returned to the land in 1763, two years after Netherey had built his cabin and was living in it peaceably, and had planted his corn; and then he wished to make more rails, but was prevented. What shadow of claim he originally might have had, was abandoned by eight years absence, and his coming then upon the land, was as unjustifiable as if he had never seen it before. The union of force and fraud by Howard, in expelling Saltsman the tenant of Burney, from the possession, wears a very different aspect. The wild extravagant doctrines which prevailed before the revolution respecting improvements, are now sunk into contempt; and a series of temperate decisions for twelve years past, have established residence on the land as the characteristic feature of a genuine improvement.

It will not escape observation, that previous to the survey made for Burney in April 1766, he had an execution levied on *the improvement of Netherey, returnable to the preceding January term, which gave him a lien on that property. He meditated a purchase at a future day, under his judgment; and if that should be effected, no injury would be done by including it in his survey: if the improvement was considered as abandoned, he might well survey it as vacant land. Maclay had some qualms of conscience in returning the poor man's improvement for Burney, but none whatever, in returning it for Howard, who must have known of the sheriff's sale. It is clear, that such lines were traced on the ground as would enable him to return the improvement for Burney; and his being examined as to what passed at the time of the survey, and what courses and distances he run, was neither irregular nor unusual. Whether a survey was made for Burney, of the lands in dispute, was a fact submitted by the court to the jury; and

they having found the fact, the case is taken out of the limitation act.   The entry of a caveat is in many instances equivalent to the execution of a survey : it is more than a mere claim, because a survey actually made for one, may be ordered to be returned for the adverse party.   Burney was well advised when he entered this caveat : the decision of the board was long after his death, and on *ex parte* hearing : the jury were bound to do what the board of property ought to have done, on a full investigation of the merits.   Maclay must have furnished Howard with materials to take out his warrant, from its calling for the precise quantity of 72 acres, and most probably informed him of all the particulars.   Howard could not have been deceived by the return of Burney's survey, for he must have seen the marked lines on the ground.   When we advert to the dates of the warrant, and receipt for the surveying fees, and the supposed time of survey for Howard, we are naturally led to conclude that the only survey made of the lands in dispute, was really effected at the instance of Burney, and at his expence.

SHIPPEN, C. J.   So much was left to the jury, on the fact of the survey, at the time of trial, that I see no reason to set aside the verdict.

YEATES, J.   The equitable title by improvement and settlement, I thought at the trial, and still think, was in the plaintiff claiming under Daniel Netherey, and not in the defendant claiming under Charles Stewart, if he really sold his pretensions.   But there having been no previous possession within seven years next before the bringing of the action, the plaintiff was barred from recovering under this claim by the act of limitations.

The jury have found by their verdict, that a survey of these lands was made for Burney.   That fact was submitted to them, *and being established, the case is taken out of the limitation act.   [*43

But as the survey returned excludes the lands in question, if Howard laid out his money, being led thereto by the return of survey, and knew nothing of what had been done, I should be of opinion that the defendant was concluded by his return.   No evidence was given when the survey was returned ; and there are facts and circumstances which exist in the case, from which the jury might rationally infer that Howard was apprised of the legal title of Burney to these lands.   The marked trees on .the ground ; the warrant of Howard calling for the precise quantity of 72 acres, and stating the improvement of Stewart to commence from the 1st March 1758, the time of Burney's supposed improvement ; the receipt for the surveying fees six days after the Receiver General's receipt, as of a survey *made*, when the draft purports it to have been made eighteen days afterwards, . viz. : 2d July 1770, when united together, form a mass of circumstantial evidence which might induce the jury to believe, that Howard well knew of the previous transactions.   I am not

authorized to say this conclusion was unwarranted ;. and under this impression I cannot assert that injustice has been done. I therefore am of opinion that the motion for the new trial should be denied.

SMITH, J. The judge who tried the cause having expressed his satisfaction with the verdict, I concur in opinion that nc new trial will be granted.

· BRACKENRIDGE, J. The case is out of the limitation act, there having been a survey. I lay the return of the survey out of the case, and I think now as I did at the trial.

Judgment for the plaintiff.

Cited in 94 Pa. 312.