# THE SUPREME COURT

OF

## PENNSYLVANIA.

94 309
154 357
94 309
171 650
94 309
f 34 SC ²154

MIDDLE DISTRICT—HARRISBURG 1880.

## Shrewsbury Savings Institution's Appeal.

1. S. gave a judgment bond to a savings institution to secure a loan. In the condition of the bond it was expressed to be "as collateral security for sundry notes given or drawn by S. or endorsed by him or his firm and held by the institution." The notes were renewed from time to time, but there was no agreement that the bond should stand for the renewals. Certain judgment-creditors contended that the bond was collateral to the notes merely and not to the debt represented thereby, and that the lifting of the old notes by the renewals was a novation and satisfied the condition of the bond, which contention the court sustained. *Held*, that this was error.

2. The subsequent judgment-creditors were bound by the act of the debtor. He had no equity to be relieved of the lien of the judgment without payment of the debt for which it was collateral, and they had no higher equity than he had.

May 4th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Appeal from the Court of Common Pleas of *York county:* Of May Term 1880, No. 79.

Appeal of the Shrewsbury Savings Institution from the decree of the court distributing the proceeds of the sheriff's sale of the real estate of Henry Seitz. The fund arising from the sale was referred to an auditor, John W. Bittinger, Esq., who reported the facts substantially as follows: That on the 19th of June 1875, Henry Seitz was indebted to the Shrewsbury Savings Institution in an amount which was represented by notes and indorsements; that on the same day he executed a judgment-note to said institution for the sum of $6000, payable one day after date, "as collateral security for sundry notes given or drawn by the said Henry Seitz & Co., and held by the aforesaid Shrewsbury Savings Institution," and that on the same day judgment was entered on said note; that the notes which the judgment was given to secure

(309)

were for the most part renewed from time to time by the giving of new notes and the surrender of the old. In the final renewal a consolidated note for $700 was given in place of two notes previously given.

The cashier of the savings institution testified that the renewals of the notes were taken by him, as cashier, on the credit of the collateral judgment held by the institution. He did not recollect of any action taken by the board of directors on this subject. There was no evidence of any agreement with Henry Seitz, the defendant in the execution, that the collateral judgment should be security for the renewed notes.

The savings institution claimed to be awarded the amount of the debt as evidenced by one of the original notes, which they still held; and by the renewal and consolidated note for $700. Barnhardt and others, who were subsequent judgment-creditors, also claimed the fund. The auditor awarded it to the latter in his report, saying:

" If the collateral judgment had been to secure the indebtedness of Seitz to the savings institution on June 19th 1875, the auditor is of the opinion that it would cover the $700 note, that being the proper evidence of that much of the indebtedness which the judgment would have been given to secure; but the terms of the collateral judgment is to secure notes held by the institution at the date of the execution of the judgment. The auditor decides that the renewal of $450 and $350 notes and the consolidated note, and the surrender of the old notes at the time of the renewals, were an extinguishment of the old notes by novation; and that the $700 note claimed upon is not covered by the collateral judgment in evidence, in the absence of an agreement to that effect."

Exceptions were filed, which the court dismissed, and confirmed the report, which action was assigned for error by the savings institution, which took this appeal.

*J. W. Latimer*, for appellant.—The collateral judgment imports on its face, and by its very terms, payment, and it can only be discharged by payment of the notes it was given to secure to an amount equal to the sum specified in the condition of the bond: Lewis *v.* Bank, 3 Whart. 531.

The renewal of the notes held at the date of the collateral judgment-bond was not such payment of them as discharged the judgment. It was not payment unless so accepted and intended.

The renewal of a promissory note has the benefit of all the securities for the payment of the original, whether by way of mortgage, deed of trust or otherwise: Daniels' Negotiable Inst., pl. 748; Cover *v.* Black, 1 Barr 493; Lytle's Appeal, 12 Casey 131; Davis *v.* Maynard, 9 Mass. 242; Watkins *v.* Hill, 8 Pick. 522; Pomeroy *v.* Rice, 16 Id. 22; Taber *v.* Hamlin, 97 Mass.

489; Choteau *v.* Hunson, 2 Ohio 114; 3 Id. 424; Patterson's Adm'r *v.* Johnson, 7 Id. 225; Brinkerhoff *v.* Lansing, 4 Johns. Ch. 65, 73. The judgment-debtor himself could not set up these renewals and consolidation, which were made with his consent and for his accommodation, and to each of which he was a party, as payment; and the appellees, being merely judgment-creditors, and not purchasers, stand on the same footing as the defendant, with no greater equity.

*W. C. Chapman,* for appellees.—If this collateral judgment had been given to secure the payment of the indebtedness of Henry Seitz, it would present at once a different case; but its language is clear, precise and definite in limiting the security to " notes held" by the appellant, and of course held at that time. On its face it expresses no more and imports no more ; and there is nothing in this case to induce the court or a chancellor to supply by intendment what is not expressed in the appellant's favor. A number of cases are also cited for appellant to show that renewals of notes do not amount to payment unless so accepted and intended by the parties. But that is always a question of fact, and the auditor has determined it in our favor : Slaymaker *v.* Gundaker's Estate, 10 S. & R. 75; Hart *v.* Butler, 15 Id. 162; Macungie Savings Bank *v.* Hottenstein, 8 Norris 328. It rests upon the appellant to establish, affirmatively, error in these findings of fact by the auditor, and, unless error is thus shown, his findings are conclusive : Stehman's Appeal, 5 Barr 413; Miller's Appeal, 6 Casey 478; Gilbert's Appeal, 28 P. F. Smith 266.

The taking of the new notes was a novation, and the old notes were thereby extinguished : Ayres *v.* Watson, 7 P. F. Smith 360; Moorhead *v.* Duncan, 1 Norris 488.

Mr. Justice PAXSON delivered the opinion of the court, June 19th 1880.

It is conceded the judgment held by the appellant against Henry Seitz, No. 553, April Term 1875, was given as collateral security. In the condition of the bond it is expressed to be " as collateral security for sundry notes given or drawn by the said Henry Seitz, or endorsed by him, or by said Samuel. Seitz & Co., and held by aforesaid Shrewsbury Savings Institution." The note for $700, which is the subject of the present contention, was not in existence at the time the judgment was given, but the auditor finds that it is a renewal of other notes held by the Savings Institution, appellant, at that time. The fund for distribution is the proceeds of real estate of said Henry Seitz; the auditor and the court below held that the condition of the bond did not cover the renewals, and excluded the $700 note from participation in the distribution.

[Shrewsbury Savings Institution's Appeal.]

There was no agreement that the bond should stand for the renewals. We must look therefore at the legal effect of the condition. It was contended by the appellees, who are subsequent judgment-creditors, that it was collateral to the notes merely, and not to the debt represented thereby; that the lifting of the old notes by the renewals was a novation, and satisfied the condition of the bond. The distinction between the notes and the debt is exceedingly refined. If the judgment is collateral to the notes it is also collateral to the debt, for the reason that the notes are but the evidence of the debt, with a promise to pay it. Has the debt been paid? As between the parties to a note, it has never been held that a renewal was payment, unless so accepted and intended: Hart *v.* Butler, 15 S. & R. 162; Weakly *v.* Bell, 9 Watts 273; Hacker *v.* Perkins, 5 Whart. 95; Oliphant *v.* Church, 7 Harris 318; Reed *v.* Defebaugh, 12 Id. 495; Brown *v.* Scott, 1 P. F. Smith 357. It follows, that the indebtedness for which the judgment was given as collateral being still unpaid, Seitz, the debtor, has no standing to allege that the note is not protected by the lien of said judgment. It is said, however, that as to the subsequent judgment-creditors the condition of the bond cannot be extended to cover the renewals. The latter, however, are bound by the act of their debtor. They have no higher equity than he has, and it is too plain for argument that he has no equity to be relieved of the lien of appellant's judgment without payment of the debt for which it was given as collateral. Ayres *v.* Watson, 7 P. F. Smith 360, and Moorehead *v.* Duncan, 1 Norris 488, have no application. In the one case, there was the equity of a surety; in the other, of a bona fide purchaser. The appellees are not purchasers: Rhodes *v.* Wilson, 4 Yeates 38; Huston *v.* Fortner, 2 Binn. 40; Cover *v.* Black, 1 Barr 493. They have no interest in the property bound by their judgments; they have a lien only. A purchaser, however, stands upon a different footing. He buys and pays for the land. He has an equity to have it exonerated. But a judgment-creditor, as was said by Chief Justice Gibson, in Cover *v.* Black, *supra*, "stands on. the foot of his debtor," and as the renewal of the notes, under the protection of the judgment, did not impair the lien of it between the original parties, it did not impair it between the appellant and the appellees.

It is proper to remark that in Moorhead *v.* Duncan the bond of indemnity stipulated for a single renewal of the notes. This would seem to exclude any subsequent renewals upon the maxim *expressio unius est exclusio alterius.*

I do not mean to say that a case might not arise in which a subsequent judgment-creditor would have an equity superior to that of his debtor; as, for instance, where the cancelled notes had been exhibited to him, and he had loaned money on the faith of it. But we have no such question before us. These appellees have not

shown any such equity, nor any equity whatever. We are of opinion that the appellant is entitled to have the said note of $700 paid out of the fund.

> The decree is reversed at the costs of the appellees, and distribution awarded in accordance with the foregoing opinion.