1809.

Sunbury,
Saturday,
July 8.

Lessee of HEISTER *against* FORTNER.

2b  40
144  321
Binney.
2b  40
157  311

The registry of a deed defectively proved or acknowledged, is not constructive notice to a subsequent purchaser, although the registry be made in the proper county.

On the 28th April 1788, *A* assigned to trustees for the benefit of creditors all his lands in the county of *N* &c. and the same day acknowledged the deed before a judge of the Common Pleas of the county of *M*, who at that time had no authority to receive an acknowledgment of deeds for lands out of his proper county.

On the 26th February 1790, the assignment was recorded in the county of *N*.

IN this action of ejectment, a verdict was entered by consent for the plaintiff in the Circuit Court of *Northumberland* county, subject to the opinion of this Court upon a case which stated in substance as follows:

The title in fee of the lands for which the ejectment was brought, was in *Thomas Rees* on the 28th *April* 1788. On that day, *Thomas Rees* of *Montgomery* county, and *Hannah* his wife, in consideration that *Rees* was indebted to *Charles Massey*, *Christopher Marshall*, and others, in several sums of money which he was unable to pay, and also in consideration of five shillings, conveyed to *Charles Massey*, *Christopher Marshall*, *Israel Jacobs*, and others, their heirs &c. all and singular his lands &c.; upon trust to sell the same in such convenient time as should seem meet to them, and to apply the money arising therefrom to the payment of all the just debts payable by *Rees*, to such creditors as should sign and agree to certain conditions in a certain instrument contained; the surplus money to be for the grantor after paying all debts.

This indenture contained a reservation to *Rees* of full power and perfect liberty to enter upon, occupy, and enjoy all or any part of the said lots, lands &c. situate in the county of *Northumberland*, and to take and receive the yearly rents issues and profits thereof, for and during the term of four

On the 25th *March* 1789, *B* obtained judgment against *A* in the county of *M*. On the 15th *March* 1792, he executed an instrument recognizing the assignment of *A*, and agreeing to be bound by its terms. To *February* term 1796, *B's* executors issued a scire facias on the judgment, and upon return of one "*nihil*" signed judgment. To *August* 1797 they issued a test. fi. fa. to the county of *N*, and a test. vend. ex. to *November* 1797, upon which certain of the lands assigned by *A* were sold to *C* the lessor of the plaintiff.

*Held*, that although the judgment upon one "*nihil*" was erroneous, and actual notice of the assignment was brought home to *B*, which made the subsequent proceedings upon his judgment a fraud upon the creditors, yet as the assignment was defectively acknowledged, the record in *N* was no notice to *C*, who being a bona fide purchaser at sheriff's sale without notice, was therefore entitled to recover.

A judgment creditor is not a purchaser or mortgagee within the meaning of the act of 18th *March* 1775; but a purchaser at sheriff's sale under that judgment is.

A judgment after one "*nihil*" upon a scire facias post annum & diem, may either be set aside for irregularity, or reversed on error; but the irregularity cannot be noticed collaterally in another suit; and even if the judgment be reversed or set aside, a purchaser at sheriff's sale, to whom a deed has been made, will hold the land.

2b     40
e 36 SC 1532

2b    40
225    1576

years from the 1st of *April* 1788; and also in his own name, or in the name or names of his said trustees, or the survivor or survivors of them, at his own cost, to prosecute suits for the recovery of all or any of the said lands &c. within the said four years, as fully and absolutely as if the assignment had never existed. The grantees, at the same time, were at liberty to sell all or any of the lands in *Northumberland* county within the four years, notwithstanding the above reservation.

On the same day the deed was acknowledged before *Frederick A. Muhlenberg*, *a justice of the Court of Common Pleas for Montgomery county*; and on the 26th *February* 1790 it was *recorded in Northumberland county.*

On the 29th *April* 1788, *Israel Jacobs* and others, twenty in number, creditors of *Thomas Rees*, recognizing the above stated indenture, in consideration thereof did agree to suspend all demands against *Thomas Rees* for four years from the 1st of *April* 1788, yet not so as to debar them from demanding a dividend of such money as should come to the hands of the trustees within that period; they also released to *Rees* his household furniture, and *ratified and confirmed the agreements made by the trustees with* Rees.

On the 25th *March* 1789, *Abraham Weitner* obtained a judgment in *Montgomery county* against *Thomas Rees* and another, in an action of debt instituted to *December* term 1787.

On the 15th *March* 1792, *Weitner*, by an instrument of that date, recognized the deed of *Thomas Rees* of 28th *April* 1788, and also the deed of the 29th *April* 1788, and bound himself, his heirs &c. to abide by the conditions of the last mentioned deed, in consideration of the former, as fully as if he had executed the same.

A *scire facias* upon the judgment obtained by *Weitner* in *March* 1789, was issued by his executors, returnable to *February* term 1796, in *Montgomery county*, to which the sheriff returned "*nihil.*" On the 9th *February* 1796, a judgment *nisi* was entered for the plaintiffs. A *testatum fi. fa.* issued to *Northumberland* county, returnable to *August* 1797, upon which there was no return of a levy and condemnation although both were made. A *testatum venditioni exponas* then issued to *November* 1797, and upon this writ the land in question was sold by the sheriff to *Gabriel Heister*, the lessor of the plaintiff, and a deed made accordingly.

1809.

Lessee
of
HEISTER
v.
FORTNER.

If this court should be of opinion in favour of the plaintiff, judgment to be entered for him in the Circuit Court *nunc pro tunc;* but if in favour of the defendant, then in the same manner a nonsuit to be entered.

The case was argued at *July* term 1808, by *Duncan* on the part of the plaintiffs, and by *D. Smith* and *Watts* for the defendant; and was held under advisement until this day, when the judges delivered their opinions.

The Chief Justice did not sit upon the argument, having been of counsel with the defendant.

YEATES J. The first question which presents itself for consideration in this case, is, whether the deed of assignment from *Thomas Rees* and wife to *Charles Massey* and others, dated 28th *April* 1789, not being recorded in *Northumberland* county within six months from its date, is not merely void to all intents and purposes, except as between him and his trustees?

This depends upon the words of the 8th section of the act, " for acknowledging and recording of deeds," passed in 1715, (1 *St. Laws* 112) which are as follow: "*no deed* or *mort-* " *gage,* or *defeasible deed,* in the *nature of mortgages,* here- " after to be made, shall be good or sufficient to convey or " pass any freehold or inheritance, or to grant any estate " therein for life or years, unless such deed be acknow- " ledged, proved, and recorded, within six months after the " date thereof, where such lands lie, as herein before directed " for other deeds." It has been contended that this is a *de-feasible* deed; because, if *Rees,* or any one in his behalf, had paid the debts intended to be secured thereby, or if part of the lands conveyed had been found sufficient for those pur- poses, equity would have decreed a reconveyance to *Rees,* and of course in our state the uses would have enured to his benefit. It is said, that the section under consideration is similar to *sec.* 1. of the statute 27 *Hen.* 8. c. 16, the words of which are, " that no manors, lands &c. shall pass, alter, or " change from one to another, whereby any estate of inhe- " ritance or freehold shall be made or take effect &c. except " the same bargain and sale be made by writing indented, " sealed, and enrolled &c. within six months next after the " date of the same writings indented &c." Under this statute it has been resolved, (a) that no estate passes until the deed

(a) 2 *Inst.* 671. *Cro. Jac.* 408. *Cro. Car.* 110. 216. 569.

be enrolled; but when enrolled, it relates to the time of its execution, if no act has been done to prevent it. But it has never been considered under the recording act of 1715, that *all* deeds were to be recorded within six months, the words *in the nature of mortgages*, in the plural number, being construed to relate to all the preceding words in the sentence; and the point has been so adjudged in this court upon argument. Assuming this then as the true construction of the law, the only question is, whether this be a mortgage for securing the payment of money, within the intention of the act, or an *absolute* conveyance. It is certain that the debts due to the creditors formed the consideration of the deed, and with the nominal sum of five shillings, is so expressed therein; but it is also clear, that the trustees were vested with the complete legal estate, and were empowered to sell all or any of the lands in *Northumberland* county, in such convenient time as to them should seem meet, either by public or private sale, without the control or interference of the grantor.

I fully admit the maxim, once a mortgage always a mortgage, (*a*) and that every mortgage is a conditional sale. (*b*) But mortgages are distinguished from defeasible purchases subject to a repurchase. (*c*) In this government, where a mortgagee would recover the money due to him, after default made by the mortgagor, the old act of 1705, " for taking " lands in execution for payment of debts," prescribes the mode of recovery by suing out a *scire facias*, " after the ex- " piration of twelve months next ensuing the last day whereon " the mortgage money ought to be paid, or other conditions " performed," and then proceeding upon the judgment by *levari facias*. It will not be pretended, that proceedings of this kind could regularly be had upon the deed under consideration, or that the trustees could not proceed to a sale of the premises conveyed, without the instrumentality of a court of record: and thinking as I do, that mortgages recoverable under the provisions of the former act of 1705, are alone comprehended by the 8th section of the recording

1809.

Lessee
of
HEISTER
*v.*
FORTNER

(*a*) 1 *Vern.* 8. 33. 190. 488. 1 *Wms.* 268.
(*b*) 3 *Wms.* 9. 1 *East,* 295. 1 *H. Bl.* 119.
(*c*) *Pow. on Mort.* 34. 50. 156. 301. 302.

44

act of 1715. I am of opinion, that the not recording of this deed in the proper county within *six months* from its date, does not affect its binding force.

The second question is, whether the recording of this deed upon the 26th *February* 1790, operates as constructive notice of its contents, to the lessor of the plaintiff in the present ejectment.

The deed was acknowledged on the 29th *April* 1788, by *Rees* and his wife, before *Frederick Augustus Muhlenberg*, esquire, one of the justices of the Court of Common Pleas of *Montgomery* county, at which time no law of the state authorized such acknowledgment where the lands lie in a different county, nor was the recorder of *Northumberland* county authorized to place the same on record in *February* 1790. It is in vain to say that the law will presume the judicial officer to have competent authority, when it clearly appears to us by his style of office, that he had no such legal power. I by no means think that the doctrine of constructive notice should be extended beyond its settled limits. Lord Chancellor *Redesdale* in *Lord Dunsany* v. *Latouche*, 1 *Scho. & Lef.* 157, has said that if a deed in *Ireland* be *unduly* registered, it gains no preference thereby; and though his doctrine in that case has been affected by a subsequent decision in the Court of Exchequer, (*a*) I do not find that his observation in this particular has been questioned. The same thing is asserted by Mr. *Sugden.* He observes, it would seem that the courts might hold, without any violation of principle, that a purchaser should not be deemed to have notice of an equitable incumbrance, by the mere registry of it, unless it was duly registered (*b*). But the very point has been determined in the Supreme Court of the *United States* in 1805, in *Hodgson* v. *Butts*, (*c*) on error to the Circuit Court for the district of *Columbia*, that a mortgage of chattels in *Virginia*, not acknowledged or proved by the oaths of three witnesses, according to the laws of that state, though recorded, was void as against creditors and subsequent purchasers. A case, similar in principle, came before Judge *Brackenridge* and myself at a Circuit Court in *Lewis Town* in *May* 1801, between the *Lessee of Joseph Simon* and *William Brown.* There the plaintiff claimed the lands in controversy under an application in

(*a*) 1 *Scho. & Lef.* 468.          (*c*) 3 *Cranch* 155.
(*b*) *Sugden.* 470.

the name of *Robert Semple*, assigned to *Jos. Simon* on the 18th *January* 1769. The defendant claimed under the same application which was assigned to *William Plunket* on the 3d *May* 1782. To shew a constructive notice to the defendant of this previous assignment to *Simon*, the certificate of its being recorded in *Cumberland* county, on the 26th *March* 1789, was offered in evidence. This defendant held under *Henry Drinker*, who had purchased from *John Thornbrugh*, on the 28th *April* 1795. The assignment to *Simon* was recorded on the oath of *Solomon Etting*, before *Robert Maxwell*, esq. then president of the Court of Common Pleas of *Franklin* county, that *Semple* had acknowledged the assignment to be his act and deed, and that certain persons were the subscribing witnesses thereto. The court held that the affidavit was informal and illegal, and did not authorize the recording of the assignment; it was no evidence whatever of notice to the defendant, and could not be received as such.

Upon these authorities, I hold that the lessor of the plaintiff cannot legally be said to have had constructive notice of the deed to the trustees, though placed on record by them, without having taken the necessary preliminary steps for that purpose.

The remaining question is, whether a court of equity, under all the circumstances of this case, would afford relief to the trustees.

It has been strongly urged on the part of the defendant, that a judgment creditor is not within the meaning of the supplement to the act for acknowledging and proving of deeds, passed on the 18th. *March* 1775, 1 *St. Laws*, 703: that the original judgment of *Weitner* in *Montgomery* county was no incumbrance on the lands which lie in *Northumberland* county, and that the judgment on the *scire facias* was a mere nullity, being founded on one *nihil* returned, nor could it have been served either on *Rees* or the terretenants, who lived out of the bailiwick of the sheriff, and consequently the judgment entered thereon was radically defective, being without notice: that this procedure of *Weitner* was in direct violation of his plighted faith, and fraudulent as to the other creditors of *Rees*, and therefore could confer no right: that if the trustees had known of the levy or sale of the lands, they could readily have obtained the sale of the lands to be

Lessee
of
HEISTER
v.
FORTNER.

set aside, as well on the ground of irregularity in not serving the *scire facias*, as of *Weitner's* written engagement; and that this being the first opportunity afforded them of contesting the matter, it should be taken *nunc pro tunc:* that this is substantially the same case as if the sheriff had levied on the lands of a stranger, whose deed had not been regularly recorded, because, as to *Weitner*, the lands were no longer subject to his execution, nor could he levy on them against his own stipulation: and that under the 4th section of the aforesaid act of 1705, the sheriff's vendee is to hold the land for such estate, as the debtor himself might could or ought to do, at or before the taking the same in execution.

These arguments have some force, but more plausibility. They are, however, entitled to distinct answers, if such can be given. Unquestionably it is a case of hardship on either side; and where the loss shall be thrown, on solid legal principles, conducive of permanence to land titles and to the public security, is the great object of inquiry.

I freely concede that a judgment creditor is not to be considered as a purchaser or mortgagee, within the words or spirit of the supplement to the recording act, passed on the 18th *March* 1775. Neither the preamble, enacting clause, nor exception, embraces the case of a judgment creditor; and if the legislature had meant to include such creditors, they would have so declared themselves in clear and unequivocal terms. This point was determined by Judge *Smith* and myself, at a Circuit Court held in *Fayette* county in *October* 1804, between the *Lessee of James Rogers* and *John Gibson* and others. Money, which is advanced on a mortgage, is parted with on the security of the lands; but a man is as often trusted on the security of his person and effects, as of his lands. But a *purchaser* under a judgment stands on a very different footing from the *plaintiff* in that action.

I likewise agree, that the judgment on the *scire facias* in *Montgomery* county, was wholly irregular; and that the court from which the process issued, would without hesitation have set aside the sale, on both of the grounds alleged, if application had been made to them previous to the acknowledgment of the sheriff's deed. The judgment also would have been reversed on error. Nevertheless, under the last section of the aforementioned act of 1705, " if the judg-

" ment had been reversed for error, the lands could not be " returned, nor the sheriff's sale thereof be avoided, but res- " titution only should in such case be made of the money or " price for which the lands were sold." This is strictly agreeable to the principles of the common law, in case of the sale of a term for years in *England*, in order that sales by sheriffs may not be defeated, (*a*) provided the sale has been to a stranger. (*b*) The justice and regularity of the proceedings of one tribunal, can only be reexamined in a superior court, and cannot be reviewed or corrected by another tribunal *collaterally* in another suit. But if *Weitner* or his executors had become the purchasers at the sheriff's sale, the trustees might have taken advantage of the illegality of their proceedings, and of the fraud practised by him or them on the other creditors. Express notice also of the deed made to the trustees would be brought home to him by his written recognition thereof. It is the great prominent feature of this case, that neither direct nor implied notice of the assignment can be imputed to the lessor of the plaintiff. He was therefore a *bona fide* purchaser, and paid his money, confiding in the judgment of a court of competent jurisdiction, under a fair sale, and is entitled to protection under the words and spirit of the act of 18th *March* 1775. Having the legal estate in him, a court of chancery, between two equities, would not interpose to his disadvantage, but where the loss has happened, there would it be permitted to continue. It falls within the common rule, that where, of two persons equally innocent or equally blameable, one must suffer, the loss shall be left with him on whom it has fallen. Where there is equal equity, it is fully settled, the law must prevail. It has been decreed, that the registering of an equitable mortgage in *Middlesex*, is not presumptive notice of itself to a subsequent legal mortgagee, so as to take from him his legal advantage. (*c*) And I may be permitted to repeat what sir *Joseph Jekyll* said upon another occasion, (*d*) that under the special circumstances of this case, though Mr. *Heister* might have searched the records of *Northumberland* county, yet he

(*a*) 8 *Co.* 96 *b.* 143 *a.* 1 *Vez.* 195, 196.
(*b*) *Dy.* 363 *a. Yelv.* 180. 2 *Leon.* 92. 5 *Co.* 90. *Jenk.* 264. *Cro. El.* 278.
(*c*) *Ambler* 678.　　　　　(*d*) 2 *Eq. Cas. Abr.* 609. *pl.* 7.

was not bound to do it, when the insertion of the deed on the record was wholly unauthorized.

When it is objected here, that the plaintiff can only succeed to the rights of *Weitner*, and can take no larger estate than *Rees* held at the time of the lands being levied, it must be remembered, that the judgment on the *scire facias* and the executions issued thereon, were not merely void but voidable; and that *Heister* remains uninfected with the slightest species of fraud, and an entire stranger to all the proceedings between the original parties. It will not be questioned, if *Rees* had sold these lands to an innocent stranger, who had acted with the most perfect good faith throughout the whole transaction, and had obtained the registry of his deed before the assignment had been duly recorded in the only manner known to the law, that such vendee would have been within the plain words and meaning of the supplement to the recording act. Now, to *Weitner* and his executors, the plaintiff is wholly a stranger, and whatever right or interest *Rees* could legally convey, the sheriff might levy on and sell, and his vendee coming in by act of law, would be entitled thereto. He cannot possibly be in a worse situation than if *Rees* had sold and conveyed; on the contrary, he might justly claim every preference which the policy of the law confers on purchasers at sales made by the officers of justice. Lord *Hardwicke* has said (*a*) that the rule is right, that whoever takes the assignment of a bond, being a chose in action, takes it subject to all the equity in the hands of the original obligee; but length of time and circumstances may vary that, and make the case of the assignee stronger.

For these reasons, I am of opinion, that however unworthy the conduct of *Weitner's* executors may have been, (and it surely merits great reprehension, and will be viewed by every honest man with much indignation, if they really knew the facts) however irregular their proceedings, and however hard the case may bear on the creditors in general, the trustees can impute their loss solely to their own mistakes and negligence, and that their only remedy is either by writ of error on the judgment in *Montgomery* county, or by suit against the legal representatives of *Weitner* for their gross

(*a*) 1 *Vez.* 123.

misconduct. On the whole, I am abundantly satisfied that judgment should be entered for the plaintiff.

BRACKENRIDGE J. In this case the title is admitted to have been in *Thomas Rees*, on the 28th *April* 1788. This title is alleged to be derived to the lessor of the plaintiff, through a judgment in favour of *Abraham Weitner* against *Rees*, on the 28th *March* 1789, in *Montgomery* county, upon which the executors of *Weitner* obtained judgment on *scire facias* the 9th *February* 1796; a *testatum fi. fa.* to *Northumberland*, issued upon this judgment, returnable to *August* 1797, and a *testatum vend. exp.* to *November* 1797, upon which the lands in question were sold to *Heister* by the sheriff, who made this return to the *venditioni*, and executed a deed accordingly.

The alleged defect in this derivation, as vesting the interest of the debtor in the purchaser, is an alleged irregularity in the proceedings under which the sale was made. No returns appear on the record of the *testatum*, of a levy on the property sold, so as to ground a *venditioni exponas* on which the sale was made. But the proper time for the debtor, or those who have an interest in him, to have availed themselves of this defect, was before the deed was made by the sheriff, or acknowledged in court. This and the like objections come forward properly at that stage. But even on a writ of error, supposing this irregularity to be such error as would avoid the sale, a debtor who had not availed himself of it at the proper stage, would not be relieved against the sale, even at common law, where a stranger was the purchaser. *Goodyer* v. *Junce*, 1 *Yelv.* 179, no return made to ground a *testatum*, yet execution. It shall be presumed there was such writ, and if sale has been made to a stranger, yet upon the reversal the debtor shall not have his term again; for it is the party's folly he does not pay the judgment, and if such a sale should be avoided no one would buy goods of the sheriff, whereby many executions would fail.

The title of plaintiff is also resisted by what is alleged to be a title derived from the debtor *Rees*, prior to the lien under which the plaintiff derives title, that is, the attaching of the judgment under which the sale was made; in fact be-

fore even the judgment was entered on which the *testatum* issued, which alone could attach upon the lands in question. This was by a conveyance from the debtor. The first question which arises must respect the nature of this conveyance. If absolute, and for a valuable consideration, and *bona fide*, transferring the property, it takes place of the judgment or *testatum fi. fa.* under it, for it is prior. But the consideration was the discharge of the grantor's debts, except as to the nominal sum of 5*s.*; and though creditors are the grantees, yet they are in fact but trustees for this purpose, and by the special provision of the conveyance, only for such of the creditors, as should sign and agree to certain conditions in a certain instrument, *the surplus money to be for the grantor after paying all debts.* This must mean the debts of such creditors as should sign and agree as aforesaid; or taking it to mean all debts of all creditors, and the grant to be for this object, yet it is " reserving to the grantor full power and " perfect liberty to enter upon occupy and enjoy all or any part " of the said lots and lands, situated in the county of *North-* " *umberland*, and to take and receive the yearly rents, issues " and profits thereof for and during the term of 4 years, the " grantees to be at liberty to sell any of the lands in *Northum-* " *berland* county within the 4 years notwithstanding the " above reservation." The land in question was in the county of *Northumberland.*

This grant was good against the grantor, and defeasible only by satisfying the object of the grant. But by so doing, it was as much defeasible as a mortgage. A sale made in pursuance of the trust would be good; but the grantor must be considered as having an equitable right, to supersede all execution of the trust by satisfying the object of it. Where an estate is conveyed to trustees, upon trust to sell and pay debts, &c. and to pay the surplus of the moneys to arise by sale to the grantor, the debt of the judgment creditor can only, it should seem, affect the surplus moneys in the hands of the trustees, and is not *a lien on the estate itself. Sugden's Law of Vendors*, 305. But no sale here had taken place prior to the levy or sale under the judgment; so that the case of a *purchaser under the trustee does not intervene.* But this grant though good against the grantor, or judgment creditor to this extent, cannot farther affect creditors who do not choose to accede to the instrument. As to them it is void; for in the

words of the statute 13 *Eliz. c. 5.* it may be *to the let or hinderance of the due course and execution of law and justice,* " and as against such persons whose actions, suits, debts, " accounts, &c. might be in anywise *disturbed, hindered or* " *delayed,* it is void, frustrate, and of no effect." Even with personal notice of this deed therefore, I take it the debt before due and owing, and contracted on the credit of this fund, as must be presumed, could not be affected by this grant, in proceeding to recovery.

In this view of the case, it might not be necessary for me to consider the effect of the registry of this conveyance as giving notice of it, the duly registering being questioned on the ground that it had not been proved according to the requisites of the registering act. Nevertheless having an opinion, I may express it, which is, that it would not seem to have been so proved as to warrant the registering in the county of *Northumberland;* and taking that to be so, I have no hesitation in saying that it could not be notice. This if notice, is constructively so; and the law cannot construe that as having an effect, which is not brought within its requisites. It is on this ground that it cannot give priority; and how then shall it operate as notice, which is the principle on which priority is given. This was my way of thinking at the argument; since which I find in the books a confirmation of my opinion. For though it is thrown out by the chancellor *Reidesdale, that if registry be notice, it must be notice whether duly registered or not; Shoales* and *Lefroy* 157; yet we have this *dictum* adverted to in *Sugden's Law of Vendors* 470, with the author's comment, " that this is assuming what " has never been decided; and it should seem that the courts " might hold without any violation of principle, that a pur- " chaser should not be deemed to have notice of an equit- " able incumbrance, by the mere registry of it, *unless it was* " *duly registered.* Why should equity interfere in favour of " an incumbrancer, when he has not complied with the " salutary requisitions of that very act, upon which he lays " his foundation for relief." To apply this to the deed in question, it is taking it to be but an equitable conveyance; but the reasoning is the same where the contest, as it is alleged in this case to be, is between a prior and subsequent absolute conveyance. Why should the law interfere in favour

of a purchaser, to *construe notice* by a registry which has not been made according to the requisites of the registering act?

But we come now to the main strength of the case on behalf of the defendant. The judgment creditor under whom the plaintiff claims, *Abraham Weitner*, did by his deed recognize the deed of *Rees*, and also another deed of other creditors recognizing the deed of *Rees;* and therefore it cannot be in his mouth to say that he is *letten, hindered*, or *delayed* in his execution; and the conveyance in question bars any right derived to him under his judgment, thus proceeded upon contrary to his agreement. But who is it that shall set up this bar against him? *Thomas Rees* the debtor, or those who come in under him by virtue of these trust deeds, so given or acceded to? Shall they be permitted to set this up against a purchaser under *Thomas Rees* the debtor? Will it not be an answer from a purchaser to say, you suffered this judgment to stand on the record without an entry of satisfaction or stay, and what is more, this deed of *Weitner* is not recorded duly or unduly. I have had no notice of it, actual or constructive. I have been led to lay out my money by this appearance of an existing judgment, and proceeding under it; and whether by the fraud of the judgment creditor, or the want of information on the part of his executors, the negligence of the debtor or his grantees, it ought not to work me an injury. It is contrary to the policy of the law in supporting sheriffs' sales, which might have been set aside on motion, or reversed by writ of error. In this view of the case, a purchaser is in a better situation than a judgment creditor himself. For the want of notice will protect him, while the privity of the judgment creditor to the transaction, takes that away.

As to a judgment creditor not being a purchaser, strictly speaking, he is not so. His lien approaches him to the character of a mortgagee. One cannot call a judgment creditor a purchaser; all that he has by the judgment is a lien upon the land. 2 *Peere Wms.* 491. But " the statute of *Elizabeth*, " expressly extends to charges upon the land; for the words " are ' shall or do bargain, &c. or *charge the same lands,*' and " charges upon, as well as charges *out* of the land, seem " within their natural import. It is true the conusee of a " statute or recognisance, has, in strict legal language, no

"charge upon the land; he has neither a right in, nor a right to the land; and if he release his right in or to the land, he may nevertheless extend it if he choose. But yet in common intendment, statutes and recognizances are charges upon the land, and they have been so called in courts of law; and it would have been too much to circumscribe the operation of a law for the prevention of frauds, by insisting on such technical formalities. In *Garth* v. *Estfield*, it was said, that though the statute did not expressly speak of conusees, it should be expounded to extend to them, for the statute had always *received an equitable construction to relieve purchasers.*" Roberts on *Fraudulent Convey.* 392. The purchaser at sheriff's sale, is a purchaser, and protected under want of notice like every other. The consequences would be monstrous, if the law would suffer him to be disturbed by the collusion and secret trust, or to be affected even by the culpable negligence, of those who were under a moral and legal obligation to do something, which would save others from laying out their money without consideration. The policy of the law to obviate fraud, is against it. I concur in the argument of counsel on one side in this case, that even had the debt been paid by *Rees* or by his trustees to the judgment creditor, or had an agreement in writing been made but not filed, or a release not put upon record, this would not affect an innocent purchaser under the outstanding judgment. There will be a loss in this case, provided the estate of *Rees* should prove insolvent; and it comes to this, whether it shall fall upon creditors who have gone out of the ordinary course, by an arrangement with the debtor, however founded in humanity to him and a spirit of equal justice to other creditors, yet who have not conducted the arrangement in such a manner, as to save purchasers from laying out their money on the property which was the subject of the arrangement. This I admit is taking it as established, that the conveyance to the trustees in the first instance, did not absolutely divest the property out of the debtor; or, that the not duly recording it as against other creditors, avoided it. For otherwise whatever might become of the judgment of *Weitner*, the land conveyed would be out of the reach of the lien of it. And I am aware that the considering these conveyances in this point of view, is in the way of almost any arrangement that a

debtor possibly can make for a *pro rata* payment of his debts where he is indebted to several, short of a consent of the whole of his creditors, and contrary to the policy of the statutes of bankruptcy in this particular, and of insolvent acts; but I think it better that the arrangement should be left to the positive regulations of statute, or to the ordinary course of law, than that an opening should be given by an arrangement of the debtor's own, to collusion and fraud. If a debtor wishes to give property in discharge of what he owes, let him transfer it absolutely, individually according to their debts, or to one for the use of the whole, as the law does in the cases of bankruptcy or insolvency; and not as here for the use of such as shall sign and agree to certain conditions, or to cut and carve for himself as to use and occupation and perception of profits, and bringing suits in his own name or in that of his trustees. This is inconsistent with a fair and *bona fide* parting with the property, and in the nature of the disposition, and most generally in the intention of it, is but a cover for fraud, and a reservation of interest for the debtor himself. From all the experience I have had, it takes place in the case of shuffling debtors, who have contracted debts without an honest intention of discharging them, and have put off the payment, with a view to save something in the confusion of appropriation. If a man must fail, let him call his creditors, and leave the disposition to their consent, or where they cannot agree, to the ordinary disposition of the law; it is in vain for him to attempt to continue a sort of ownership; and it is unreasonable, where his situation raises a presumption that his conduct has not been at least prudent, in the management he has already had of his affairs. I have a strong leaning against every thing of this kind, and think it best that it be left to the law to settle a man's affairs, when they have become so embarrassed that it must be evident he has not been provident himself, than that we should hear of his taking care of his creditors by deeds of trust, not having the fair open and general consent of the whole of the creditors. It is better that he should be suffered to prefer individual creditors, than that the least countenance should be given to ways and means of defrauding all.

On these grounds, I am of opinion for the plaintiff.

                 Judgment for plaintiff.