Where a judgment is reversed, this Court gives no costs; and if levied by execution, will order the different officers to refund them.

WRIGHT and another *against* The Lessee of SMALL.

IN this case a judgment had been rendered in the Common Pleas of *Mercer* county, against the present plaintiffs in error, which was afterwards reversed by this Court, and a *venire de novo* awarded. An execution was then issued from this Court, to levy the costs, which accordingly were paid. But upon application by the party who had been compelled to pay them, *The Court*, upon the ground that where a judgment is reversed, this Court gives no costs, quashed the execution, and ordered the money received by the different officers, to be refunded.

---

Lessee of DAWSON *against* BIGSBY.

IN ERROR.

*Pittsburg,*
*Saturday,*
Sept. 19.

*A* made application to the secretary of the land office for a tract of land particularly described, lying north and west of the *Ohio* &c. On the 3d of *April* 1792, a warrant issued, which by mistake of the office, was filled up with lands lying elsewhere. On the 10th of *April* 1792, the warrant was delivered to the deputy surveyor of the district, who, perceiving the mistake, did not enter the warrant in his book according to its description, but according to the description in the application, and surveyed it on the 29th of *August* following. Prior to the survey, but subsequent to the 10th of *April*, B made a *bona fide* actual settlement upon the same land. *Held*, that the entry made by the deputy surveyor had no effect against third persons, and that *B* was entitled to recover.

THIS was a writ of error to the Common Pleas of *Beaver* county.

It was an ejectment for 100 acres of land lying north and west of the river *Ohio*, &c., which the plaintiff claimed under an actual settlement and improvement, begun after the 10th of *April* 1792, and before the 29th of *August* in that year.

The defendant claimed under an application of the 3d of *April* 1792, by George *M'Cormick*, " for 100 acres on the " west branch of *Ohio* river, beginning on the said river " where the western boundary of *Pennsylvania* crosses the " same, and up the said river, and along the said river, for " quantity." On the same day a warrant issued to him upon that application, " for 100 acres on the west branch of *Ohio* " river, beginning nearly opposite the mouth of *Raccoon creek*,

"and to extend down the river for quantity." This warrant was thus filled up by mistake of the clerk, or other person in the secretary's office. On the 10th of *April* 1792, it was delivered by *M'Cormick* to *John Hoge* the deputy surveyor of the district, who, knowing the application of *M'Cormick*, made an entry of it in his book, not according to the description in the warrant, but according to the application; and on the 29th of *August* following he surveyed it upon the land described in the application, which was the land in dispute.

The Court below gave it in charge to the jury, that unless the improvement of the plaintiff was made prior to the 10th of *April* 1792, or his settlement was connected with an inception of title before that date, the defendant was entitled to a verdict, which the jury accordingly found; and it was agreed by the counsel on both sides, that this point, as well as some objections to testimony, which are not material, should be argued in this Court, in the same manner as if bills of exceptions had been regularly taken.

The question turned upon the 3d, 4th, and 5th sections of the act of the 3d of *April* 1792, 3 *Smith's Laws* 70.

The third section enacts, that "upon the application of any "person, who may have settled or improved, or is desirous "to settle and improve a plantation within the limits there "mentioned, to the secretary of the land office, *which appli-* "*cation shall contain a particular description of the lands ap-* "*plied for*, there shall be granted to him a warrant for any "quantity of land within the said limits, not exceeding 400 "acres, requiring the surveyor-general to cause the same to "be surveyed for the use of the grantee" &c.

The fourth, after requiring the surveyor-general to divide the territory into districts, and to appoint a deputy surveyor for each district, enacts "that every deputy surveyor who "shall receive any such warrant, shall make *fair and clear* "*entries thereof* in a book, to be provided by him for that "purpose, distinguishing therein the name of the person "therein mentioned, the quantity of land, date thereof, and "the day on which such deputy surveyor shall receive the "same; which book shall be open at all seasonable hours "to every applicant, who shall be entitled to copies of any

1812.

Lessee of
DAWSON
v.
BIGSBY.

"entries therein, to be certified as such, and signed by the "deputy surveyor."

The fifth requires the deputy surveyor to proceed to survey the lands in such warrants described, as nearly as might be, agreeably to the respective priorities of warrants, "provided that they shall not by virtue of any warrant, survey "any tract of land, that may have been actually settled and "improved *prior to the date of the entry of such warrant* "*with the deputy surveyor of the district*, except for the "owner of such settlement and improvement."

*Campbell* for the plaintiff in error, argued that the warrant was never legally entered by the deputy surveyor, that he had no authority to make the alteration he did, and that an illegal entry was not notice, which the law intended, by requiring the deputy surveyor to keep the book. It was like the registry of a deed in a wrong county, or under a defective acknowledgment. That of course the Court erred, in saying that the settlement of the plaintiff gave no right, unless made before the entry.

*Baldwin* contra, contended that the Court was right, because the application was the basis of the title, the warrant containing on its face a plain clerical mistake, which the clerk of the office might correct, and in like manner the surveyor. That the settler had substantial notice of the lands applied for, because they were truly stated on the deputy's books; and that the warrantee was entitled to peculiar favor, as he had been guilty of no fault or laches whatever.

TILGHMAN C. J. gave no opinion, having been prevented by sickness from attending the argument.

YEATES J. It has been mutually agreed by the counsel on both sides, that the errors assigned as to the admission of testimony on the trial, as well as to the charge of the Court, shall be taken in the same manner as if the facts had regularly come before us on bills of exceptions duly sealed. In that light I shall consider them.

[The first and second exceptions noticed by his honour, related to the testimony, which is not material.]

The last exception is taken to the charge of the Court upon the merits of the case. It is agreed, that the warrant in the name of *M'Cormick*, under which and his actual settlement the defendant claimed the land, was filled up by a clerk in the land office *by mistake*. It most materially varied from the application, which is identified by *Hoge*. He therefore undertook to make an entry in his book corresponding with the terms of the application which he had put in, but not with the warrant itself. This in all probability was done from a sense of justice; but the question now, is not as to the purity of his views, but what legal operation that act superinduced, as to the litigant parties.

As between the Commonwealth and *M'Cormick*, I have no hesitation in declaring, that there was a contract binding on the state for 100 acres of land, on the west bank of the *Ohio*, beginning on that river where the western boundary of the state crosses it, which embraces the land in controversy. This was the tract which he applied for, and the proper officer by receiving and filing the same, must be supposed to have assented to it upon the usual terms. If Mr. *Hoge* was justified as deputy surveyor of the district, to vary the descriptive part of the warrant by an entry made in his book, then would the contract be also valid according to its priority, against all the world, " except such persons as had actually " settled and improved the land, prior to the date of the " entry of the warrant." There would have been an union of minds as to the sale of these lands, which the application precisely and exclusively called for. On the other hand, if the act was unauthorised, it could not divest the rights of others, who became *bona fide* actual settlers, antecedent to the time of survey. The time of entry was on the 10th of *April* 1792, and the survey was made on the 29th of *August* following.

The duty of the deputy surveyor of the district is pointed out by the fourth section of the act of the 3d of *April* 1792. Upon receiving the warrants, he is to make *fair and clear* entries thereof in a book to be by him provided for that purpose. But changing the most material part of a warrant, which locates the land accurately and distinctly, can with no kind of propriety be denominated *making a fair and clear entry thereof*. The manifest object of the legislature in directing the entry of the warrants, in the book of the deputy

surveyor of the district, was to ascertain the places which the warrants severally called for, and their priorities, and to serve as modes of information to all appliers, of what lands were vacant. Imperious duty therefore compels me to pronounce, however hardly it may operate on *M'Cormick*, or the defendant claiming under him, that the manner of the entry was unauthorised by law. The case thus presented to our view, bears a strong analogy to *Heister's Lessee* v. *Fortner*, reported in 2 *Binn.* 40., and determined on great consideration by this Court. There a deed recorded in *Northumberland* county, under an acknowledgment unknown to the law, was held not to operate as constructive notice to a subsequent purchaser; and the principle must obtain here, that this erroneous entry of the warrant cannot be deemed implied notice to actual settlers on this land.

The President of the Court of Common Pleas, has in his charge accurately delineated the improvement which can be connected with a personal resident settlement, in order to constitute an inception of title, by representing it to be an actual and *bona fide* preparation for real cultivation and habitation; that it must progress without any unnecessary delay, and be made with a view to an immediate resident settlement. Whether if express or circumstantial proof of notice can be brought home to the plaintiff, of the application of *M'Cormick* for the lands in dispute, and of the mistake committed in filling up the warrant prior to his inception of title (if such ever took place), the same may cure the erroneous entry which has been made here, or contaminate his claim as an actual settler, are matters foreign to our present inquiry. Our attention is called to the broad proposition laid down in the charge of the court, that unless the plaintiff's improvement should appear to have been made prior to the 10th of *April* 1792, the defendant would be entitled to a verdict, and it is demanded of us whether the observation is correct according to its plain meaning. On the fullest reflection, I cannot accede to the proposition in the extent in which it is laid down. I think an efficacy is thereby ascribed to the entry in the book, to which it is not legally entitled, under all the circumstances of the case. I cannot consider it as constructive notice of a contract for, or a grant of the lands in dispute; and therefore I am of opinion,

that the judgment of the Common Pleas be reversed, and a *venire de novo* be awarded.

BRACKENRIDGE J. Taking up the act of assembly of *April* 3d, 1792, and diligently considering it with a view to its construction, I could have no idea that any thing short of an application so descriptive and special as to take the land, would be received in the office. I could not have conceived, that an application special only by reference, could be received as a leading application, and applications on the back of them; because the distance north, south, east or west, which the leading application might take, could not be known. In short, I had taken it that in no case, except where a natural boundary was given, could it be possible to locate *descriptively* according to the words of the act, unless by previous marking of some tree, or setting some post or stone, or by stating the course and distance north, south, east or west, which the warrant *special by reference*, was intended to embrace. Had the office been held to this strictness by the courts, as in my opinion it ought to have been, all the confusion that has taken place under this act, would have been avoided. I would have regarded no application, or entry of warrant according to it, that was not *special* in some such way as this. The application in this case however is special; it cannot be more so. But the warrant is not taken out according to the application. There was a mistake of a clerk. What have we to do with the word *clerk?* It is the act of the principal. The secretary of the land office must be considered as making the mistake. But shall that affect the applicant, who according to his application was entitled to a different warrant? Not so far as the commonwealth has any claim, by whose officers the mistake is alleged to have been made; but as to *third persons*, it is impossible to say that it shall not affect, to whom notice cannot be traced of the truth and existing fact of the case. And even if it could be traced, how can it be said, that third persons may not have taken the advantage of this defect, in complying with the law, when it was a scramble with purchasers and settlers who should first obtain the advantage of a legal appropriation. *Vigilantibus et non dormientibus subvenit lex.* It did behove the applicant instantly to have taken his mistaken warrant back

to have it rectified; and until this was done, I cannot conceive that the surveyor had any right to make an entry of it in his books, and until this entry was made, it could not take effect as an appropriation of the land. It was short of this, and but the entry of *an application*, which the surveyor was not directed by the law to make. *Non constat* but that the application might have been abandoned, as many were, no warrant according to it having made its appearance. As to the mistake of the office, the applicant made the mistake his own, when he accepted it with that error. It behoved him to examine and have it amended, before he took it out of the office. But be it the mistake of the applicant or of the office, it must not affect third persons, who have acquired a clear right. An intention to do this or that cannot affect. I do not think the entry can be supported. Where there is a race between warrantees, or settlers and warrantees, my knowing that another has made the first application, and has obtained an agreement to convey specifying other land, will not be such an equity as will rebut mine, who have also made application, and obtained an agreement or conveyance according to my application. He perhaps knew of a prior intention on my part to make application and obtain a warrant, or I knew of his; but *prior in tempore, potior in jure;* the swiftest horse takes the purse. He has made a blunder, and I may take the advantage of it. As to the knowledge of a grant not recorded, it is the knowledge of a grant made. But here it is only the knowledge of an intention to take a grant, by me who may have, and as it would appear, had the same intention to take, and have been more fortunate in getting that first, which by the law attaches to the lands. I concur therefore to reverse the judgment.

Judgment reversed.