Judge Collett
delivered the opinion of the court:
On the trial of this ejectment in Wood county, a verdict was •given for the plaintiffs, and a motion made by the defendant for a new trial, which was reserved to be decided in this court.
This action is brought to recover the undivided three-fourths of ¡lot No. 572 of five hundred acres in the United States reserve of •twelve miles square, in the county of Wood. On the trial it was admitted that Samuel Ewing died seized in fee simple of this lot, and it was proved that the lessors are two of his children and *200 heirs. The possession of the defendant was admitted. After this case had been made by the plaintiffs, the defendant gave in evidence a copy of the record in the court of common pleas for the county of Wood, of the proceedings and orders of the court on the petition of John Hollister, the administrator of said Samuel Ewing, deceased, from which it appears that at the April term of the court, the administrator filed his petition, which stated the deficiency of assets, and necessity to sell this whole tract to pay the debts due from the estate, and that Samuel A. Ewing and John A. Ewing were the sons *and only heirs of Samuel Ewing, deceased, and prays that they may be made parties, etc. At October term, 1825, an order was made on the petition that the said Samuel A. Ewing and John A. Ewing, minor heirs, etc., should be cited to appear at the next term, to show cause why an order should not be made to sell said tract of land, or such part thereof as might have belonged to the intestate. At the same time, Thomas W. Powell was appointed guardian ad litem for the heirs, and Samuel Spafford, Ambrose Rice, and John Webb were appointed to appraise the land; afterward a citation issued to Payne C. Parker, guardian of Samuel A. and John A. Ewing, minor heirs, etc., citing him to appea^at the next term of the court, to show cause why an order to sell the land should not be made, which was served and returned to the next term. At the next term, which was in April, 1826, the court appointed Robert Forsythe an appraiser, in the place of John Webb. Hiram P. Barlow, guardian of the lessors, came into court and acknowledged notice of the petition to sell said land, and the appraisers returned their appraisement of an undivided three-fourth part of said land at two hundred and seventy-five dollars. On the coming in of the report, the court made this order: “ The appraisers heretofore appointed to appraise the real estate of Samuel Ewing, deceased, came into court and made report of their doings, as per appraisement on file, and it appearing to the court, by the settlement of said administrator, that said estate is altogether insolvent, it is therefore ordered by the court that the whole of said lands be offered for sale, under the provisions of the statute in such case made and provided.”
The defendant also gave in evidence a deed, made by the said administrator, Samuel Hollister, and duly executed, dated October 14,1826, to Elnathan Corey, for an undivided three-fourths of the *201 said five hundred acres, which recites, that in pursuance of the-order of court, after giving notice of the time and place of sale* according to the statute, he had sold said three-fourths of said land at public sale, to Benjamin E. Hollister, for two hundred and fifty dollars; that Benjamin E. Hollister had relinquished his right to Elnathan Corey; and then proceeds, that in consideration of the payment of said two hundred and fifty dollars by the said Corey, he, the said administrator, grants, bargains, and sells to said Corey, liis heirs and assigns, forever, “all the equitable interest of and to the said undivided three-fourths *of said tract of land of the said intestate at his death,” etc., “ and all the right, title, and interest which the said Samuel Ewing had, at his death; to the undivided three-fourths,” etc. Also, a decree of the court of common pleas of the county of Wood, in a suit in chancery, in which Solomon Sibly was complainant, and William A. Ewing, John A. Ewing, William H. Ewing, and Anthony Ewing, heirs of Samuel Ewing, deceased, are defendants, by which an undivided fourth part of the said five hundred acres of land was vested in fee in the complainant, Sibly. This decree was made on October 29, 1825. Also, a deed made by Sibly on March 23, 1832, whereby he conveyed to Corey the said undivided one-fourth of said five-hundred acres in fee. 'The defendant also gave in evidence a deed made and duly executed, by Corey to the defendant, dated March 16, 1833, conveying to him the whole tract of five hundred acres • in fee simple.
This motion for a new trial depends upon the validity of the administrator’s deed. The plaintiffs insist that it is void as to them:
1. Because they were not parties to the proceedings in which the order to sell was made.
2. Because the petition prayed, and the court ordered, the whole tract to be sold and the administrator sold a part only.
3. Because the deed conveys the equitable title only, and not the-legal estate.
4. Because the deed is made, by the administrator, to E. Corey,. and not to B. F. Hollister, the successful bidder at the sale.
An order of the court of common pleas, to sell the land descended to the heirs, on the petition of the administrator, is the-order of a court having jurisdiction of the subject, and is as conclusive on all interested in the land as a judgment or decree. A- *202 purchaser under such order holds his title as securely as a purchaser at sheriff’s sale under a judgment at law or a decree in chancery. To defeat his title the order can no more be attacked collaterally than a judgment or a decree; and although it may be erroneous or irregular, a title acquired under it by a stranger, before it is reversed or set aside, is as good as though it was not erroneous or irregular. 3 Ohio, 257, 325, 561; 4 Ohio, 130; 2 P. R 163; 2 Bin. 46.
The question, as to the proceedings of the court on the petition, is not whether they are erroneous or irregular and voidable, but whether they are void. The administrator, in ^obtaining an order to sell land, acts for the creditor and heirs; the money raised does not go to his but to their use. He is generally a friend of the deceased, and a friend and confidant of the heirs. The legislature, therefore, until 1824 (vide 22 Ohio L. 130, see. 9), did not ■require the heirs to be made parties to these petitions. Before that time they were all ex parte. The act of 1824 did not direct in what manner they should be made parties, what process should issue, or how it should be served ; the court of common pleas were under the necessity of using such process, and taking such measures as they thought legal and proper in making the heirs parties. Some have pursued one course and some another, especially as to minors.
The object of the law was, that the heirs should have notice of .the application of the administrator for an order to sell their land, and process served on a minor heir, who may be not a year old, could have no other effect than to give notice to its friends. In this case the proceedings were in the year 1825, before any settled practice under the act of 1824. At the time of filing the petition, the administrator did not probably know that the lessors were ■heirs. He states that Samuel and John were the only heirs. The court, before process issued to them, appointed Powell, their guardian, to defend; then process issued to their regular guard- : ian, Parker, not to the infants or guardian ad litem. On the ro■turn of the service on the regular guardian, Parker, the heirs ■were considered in court, and as to them the order was made. .At the same time, April term, 1826, Barlow, the guardian of the lessors, appeared in court and acknowledged notice of the pendency • of the administrator’s petition. The court then had the return of ;.the process served on the guardian of Samuel and John, and the *203 appearance of tbe guardian of the lessors and acknowledgment by him, in open court, of notice of the pendency of the petition on which the order was made. The appointment of Powell as guardian is of little consequence; he entered no appearance, and may not have known of the appointment. 3 Ohio, 364. The court, when they made the order, must have determined that, by serving process on the guardian of Samuel and John, and by the appearance of the guardian of the lessors, the four heirs were parties to the petition, within the meaning of the act of 1824. And this was a matter of which they had jurisdiction. Indeed, they were compelled to ^determine this question. They could not get along without. The notice was substantially as good as it will be to minors under the act of 1831 (29 Ohio L. 237), which requires notice of the filing of the petition to be given in the same manner that notice is given to defendant in chancery of the filing of a bill. By this act, process must be served on the infants, if they are within the state; this will indirectly give notice to their friends, on which it will be the duty of their guardians, if there be any, to see to their defense. Prior to the act of 1824, proceedings of this kind were summary — they were ex parte. Since, we have reason to think, they have continued nearly as much, and it may be too much so; they have conformed more to proceedings on petitions for partition than suits in chancery. Rules have not always been given for answer where a guardian ad litem has been appointed — an answer has not in all cases been put in by him unless he made objections to the order; frequently, in consequence of this, no entry of appearance has been required by the common pleas. The act of 1831 only regulates the mode of summoning and notifying the defendants; as to everything else in making infants parties to these petitions, the practice will be found to differ in the various courts of common pleas, and it is probable that it will not do to test them, even on certiorari or error, by the rules governing courts of chancery. Our chancery proceedings will not in everything bear this test. In England, after process is served on an infant defendant, he must in person be brought into court, that the court may appoint him a guardian to defend, or, if he can not be brought in, commissioners appointed by the court must attend him to make this appointment. Hind’s Oban. Prac. 98, 240. This is never done here; in consequence of which we hold that it must appear that the guardian appointed to defend had no *204 tice of his appointment, and must at least do something to signify his acceptance of the appointment. 3 Ohio, 364.
In the case of the Lessee of Heister v. Fortner, 2 Bin. 40, which was an ejectment to recover a tract of land, the lessor claimed as a purchaser at sheriffs sale to satisfy a judgment on a scire facias. The judgment was unjust, and was also irregular; it was taken without a service of the scire facias, and on the return of but one nihil, when there should have been two. The court held the sale of the sheriff good. ^Justice Yates says, “ That the judgment was wholly irregular, and that the court from which the process issued would, without hesitation, have set aside the sale on both the grounds alleged, if application had been made to them previous to the acknowledgment of the sheriff’s deed. The judgment, also, would have been reversed on error.” This judgment-was unjust, and the defendant had no notice; that was not done from which the law infers a notice. Tet the court had jurisdiction; error on the merits, in the process, or service, or in the return could not be collaterally inquired of to defeat the title of the stranger who purchased the land. He looked back only to the judgment, the execution, and, where the sale is after the return day of the execution, to the levy. 4 Wheat. 508; 4 Pet. Cond. 521. In Dabney v. Manning, 3 Ohio, 326, this court say that, on an order to sell land in a partition case by an administrator, when it should have been by the sheriff, and the administrator sells, the purchaser gets a title as good as though the sheriff had been ordered to sell or had sold; the court had jurisdiction; their error does not affect the title.
As to the second objection, that the prayer of the petition and the order of the court was to sell the whole tract, and the administrator sold a part only. In April, 1825, when the administrator filed the petition, the heirs appeared to own the whole tract; at the next October term one-fourth of it was decreed to Selby; then the court order that the heirs be cited to show cause why the whole or so much of the tract of land as belonged to the intestate-should not be sold. At April term, 1826, the court receive the appraisement of an undivided three-fourths of the tract only, and reciting it, order all to be sold, showing plainly that all meant all appraised, all belonging to the heirs after deducting Selby’s part. If the prayer of a petition is to sell a whole tract, and on the appraisement the court find that a part will pay the debts, then it *205 is their duty to order a sale of a part only. So, if it is found by the court, that the intestate owned a part only of the tract, the court may and ought to have part only appraised and sold, as they have done here.
It is further objected, that the administrator’s deed to Corey conveys the equitable estate only, if any. By the deed, the administrator, in terms, “ grants, bargains and sells” to Corey, “his heirs and assigns forever, all the equitable interest” of the *said intestate, at the time of his death, of and to the said undivided three-fourths, and “all the right and title and interest which the said Samuel Ewing had at his death to the undivided three-fourths,” etc. These two clauses are undoubtedly sufficient to convey the legal estate, as it was undoubtedly in the intestate at his death ; the United States by patent granted it to him.'
The remaining objection is, that the deed was made by the administrator-to Corey, when at the public sale the land was struck ■off to B. F. Hollister. It appears from the recitals in the deed of the administrator, that, at the sale, Hollister bid for the land two hundred and fifty dollars, two-thirds of the valuation, and that it was struck off to him; that, with his consent, Corey paid the administrator the two hundred and fifty dollars, and received the conveyance from the administrator to himself. On the payment ■of the money by the successful bidder, the law requires the conveyance to be made to him; this is for his benefit — if he directs it to be made to another, are the heirs injured? Should they, after the money has been paid to the administrator to pay their father’s debts, because of this, retake the land ? If the successful bidder ■should pay the purchase money and die before conveyance, his heirs could surely obtain of the administrator a conveyance; the sale could not be avoided on that account;'the act of Grod works no injustice. If the administrator might convey to the heir, why not to an assignee ? I can see no objection to it. It is not unusual, at public sales, for the name of another to be substituted for that of the actual bidder, with consent of all concerned. The like might have been done in this ease — it amounts to the same thing, and I like this better, because it shows the real truth of the transaction. In Kentucky, it is held that a sheriff may convey to the assignee of the purchaser at his sale. 1 Dana, 212.
Upon the whole, the motion for a new trial is overruled.