## WILLIAMS *vs.* LOGAN & MEARA.

1. The Act of 30th December, 1847, (Cobb's Digest, 180), requires marriage settlements, or agreements, executed previously to the passage of that Act, to be recorded, after its passage and publication, whether recorded or not.
2. The registration of such conveyances, only, as are *required* by law to be recorded, operates as constructive notice to subsequent purchasers of the same property so conveyed.

Trover in Bibb Superior Court, for a negro named Sampson.

The questions made in this case, rest upon the following state of facts, agreed to by the parties :

On the 20th of December, 1836, in contemplation of a marriage, which was afterwards consummated, a deed of marriage settlement was executed in the county of Chatham, then the residence of the husband, between John C. Hunter and Ann E. Aiken, by which the negro in dispute, with others, all brought into the marriage by the said Ann E. Aiken, were settled on the said John C. Hunter, the husband, and the said Ann E., the wife, and the survivor of them for life, and then to the children of the marriage. The property was conveyed by the deed, to three trustees, neither of whom was the husband or wife. The deed was attested by witnesses, one of whom was Richard R. Aiken, and by him probated before Edward G. Wilson, Deputy Clerk of Chatham Superior Court, on the 20th of October, 1841, and recorded in the Clerk's office of Chatham Superior Court, on the day of said probate. James Hunter and Charles Hunter were the only children of the marriage. Mrs. Hunter died many years ago. Thomas J. Walsh, auctioneer, sold the negro in dispute, at public out-cry, by the authority and direction of John C. Hunter, to pay certain advances made by Walsh to the said John C. Hunter, to pay for the board and schooling of the said children, James and Charles. At the sale, which occurred in 1852, one J. C. Trowbridge was the purchaser, to whom Walsh made a bill of sale. Walsh knew nothing at the time of the sale of any claim on the negro, nor did it appear that Trowbridge had any notice of any defect in the

Williams *vs.* Logan & Meara.  .

title.    Walsh did not even know of the marriage settlement, but heard it of some two years after the sale.  Walsh executed to Trowbridge his own bill of sale as auctioneer.    Logan & Meara derived their title from Trowbridge.    John C. Hunter died in 1858.    Logan & Meara were in possession of the negro in February, 1858, and on the 8th of February, 1859, and the negro died in the summer of 1859.

Under the instruction and authority of the plaintiff, Williams, acting as the next friend of the said minor children, James and Charles Hunter, a demand for the . negro was made on the defendants, Logan & Meara, by Mr. Lanier, and they refused to give up the negro.    This demand was made before the suit was brought, which was on the 8th of February, 1859, and the refusal .was general, and placed on no particular ground.

Upon the foregoing facts, the following questions were submitted for adjudication, to-wit :

1. Did not the death of the negro release the defendants from all liability, except for the hire of the negro, from the death of John C. Hunter, and the costs ?

2. Can the defendants reduce the amount of the recovery, by proving the negro was diseased at the time the demand was made, and that he subsequently died of such disease ?

3. Was the record of the marriage settlement sufficient ? Ought it not to have been again recorded, under the Act of the 30th of December, 1847, to give it validity, and to authorize a recovery upon it in this case ?

4. Does the evidence, in this case, show such a conversion of the property in dispute as to authorize a recovery ?

LANIER & ANDERSON for the plaintiff.

H. K. McKAY for the defendant.

Williams *vs.* Logan & Meara.

*By the Court.*—JENKINS, J., delivering the opinion.

1. The consent, in this case, presents several questions for the consideration, of the Court and among them, this: "Whether the record of the marriage settlement was sufficient, or whether it ought to have been recorded again, under the Act of 30th December, 1847, to give it validity, and authorize a recovery upon it in this case." In our view of this question, it must control the case, and we, therefore, deem it unnecessary to consider the others.

The question is not as to the validity of the settlement, as between the parties to it, and privies; but whether the record of it, anterior to the Act of 1847, was valid as constructive notice to Trowbridge, and those claiming under him; the defendants being in that category.

The plaintiff's counsel, in the very interesting and ingenious argument presented, assumed two positions on this point. *First*, that by a proper construction of the Act of 1847, it is unnecessary to record, a second time, a marriage settlement, which had been recorded prior to its passage, such prior record, answering by relation, its requisitions. We cannot assent to this proposition. The first section of the Act refers exclusively to settlements made prior to the passage of the Act; and its language is equally clear and peremptory. It directs that all such settlements, or agreements, "shall be recorded within twelve months after the passage and publication of this Act, in the Clerk's office of the Superior Court of the county of the residence of the husband."

It must be presumed that the Legislature knew, when passing this Act, that many existing settlements had already been rcorded. Had they intended that such record should satisfy the requirements of the Act, the insertion of three words would have expressed that intention. Those words not having been inserted, and no allusion being made to a prior registration, we are constrained to infer the absence of such intention. They undoubtedly intended to prescribe a new rule; they had not previously *required* such conveyances to be recorded.

Their new rule would be vastly more facile and certain in its operations, by limiting the researches of inquiries into title, to the date of the rule itself; and this object is accomplished by holding that the Act of 1847 requires all marriage settlements or agreements, whether previously registered or not, to be recorded within twelve months after the passage and publication of the Act. The language of the statute is not at all ambiguous; and it can only be made to meet the exigencies of the plaintiff's case, by interpolating words. This we are not authorized to do.

2. But *secondly*, it is insisted that by the Act of 1819, (Cobb's Digest, 168), or by the Act of 1827, (Cobb's Digest, 172), the record of marriage settlements is *authorized*, and that this is sufficient to make such record constructive notice, to subsequent purchasers, of the settlement so recorded. In section 403, vol. 1, of Story's Eq. Jur., the author states that, in America, "it is uniformly held that the registration of a conveyance operates as constructive notice to all subsequent purchasers of any estate, legal or equitable, in the same property." But in the next section, 404, the learned author expressly limits the operation of this American rule to such conveyances only "as are authorized and *required* by law to be registered, and are duly registered in compliance with law. He then adds: "if they are not authorized or required to be registered, or the registry itself is not in compliance with the law, the act of registration is treated as a mere nullity; and, then, the subsequent purchaser is affected only by such actual notice, as would amount to a fraud"—citing 2 Sch. and Lefr., 68; 1 Sch. and Lefr., 157; 4 Wheat, 466; 1 John. Ch., 300; 2 Binn., 40. The learned counsel uses the second or negative proposition in section 404, to explain the first or affirmative proposition, and construes the whole section to mean, that if a conveyance be either authorized or required to be registered, the registration is good, as constructive notice to subsequent purchasers. He reads the negative proposition thus: "If they be neither authorized nor required to be registered, the registry is a nullity, is ineffectual as notice," etc. He then holds that the converse is true, viz: "If

Williams *vs.* Logan & Meara.

they be either authorized or required, etc., the registry is good as notice," etc.   But this criticism upon the text, I think is illogical.   The author proceeds to state, first, affirmatively, in what cases registry will operate as constructive notice; and he thus puts it: "If they (the conveyances) be authorized and required by law to be registered, and be actually registered, the registration is constructive notice," etc.   Here he uses the copulative conjunction, intending that there must be both authorization and requirement of law, etc., to make the registration effectual as notice.   But when, next, he proceeds to state the negative proposition, to specify in what cases registration will not be valid as notice, he uses the disjunctive conjunction; he says: "If they (the conveyances) are not authorized OR required to be registered," etc.   It is as if he had said, "if they be not authorized to be registered, or if they be not required to be registered, in either event, the registration is a nullity, as constructive notice.   Thus, and thus only, can the two propositions be made to consist.   Inasmuch as to *require* by law the registration of a conveyance, is to *authorize* it, the rule may be thus briefly stated, "The registration of such conveyances, only, as are *required* by law to be registered, is constructive notice to all subsequent purchasers," etc.

The marriage setlement, in this case, not having been recorded, as required by the Act of 1847, and there being no proof of actual notice to the purchaser, under whom defendants claim, our opinion is that the plaintiff cannot recover.