1817.

| Lenox *against* M'Call.

CERTIORARI:

*Philadelphia.*

*Saturday,*
April 5.

THIS was a *certiorari* to remove the proceedings of Michael Keppele and *Jacob Baker*, esqs. two of the aldermen of the city of *Philadelphia.*

By these proceedings it appeared, that the plaintiff *David Lenox*, on the 24th *April*, 1816, made application in writing to the said aldermen, confirmed by his oath, stating, that on the 27th *October*, 1815, he purchased at sheriff's sale, in the city of *Philadelphia*, a brick messuage and lot of ground, at the corner of *Chesnut* and *Tenth* streets, sold as the property of *Peter L. Berry*, for which he obtained the sheriff's deed; that the defendant *Judith M'Call*, was in possession under *Peter L. Berry*, at the time of the sale and since; that the plaintiff had given notice to Mrs. *M'Call* three months before, to deliver up the possession, which she had not done; and praying them to issue their warrant to the sheriff to summon Mrs. *M'Call*, agreeably to the act, entitled " an act " to enable purchasers at sheriffs' or coroners' sales, to ob- " tain possession," and to proceed agreeably to law to give him redress.

On this complaint, the sheriff was commanded by the said aldermen to summon Mrs. *M'Call*, and also a jury, who, having met, by an inquisition under their hands and seals, dated the 16th *May*, 1816, found the foregoing facts, and as- sessed " the sum of 360 dollars, for the damages of him, the " said *David*, occasioned by the unjust detention of the pre- " mises."

Accompanying these proceedings, the aldermen returned a paper under their hands and seals, dated the 16th *May*, 1816, entitled a " record," in which they stated, that the premises in question, were purchased at sheriff's sale, on the 27th *October*, 1815, by *David Lenox*; that they were at that time in the possession of the defendant, who came into pos- session under *Peter L. Berry*, whose property they were, " subject to the opinion of the Court, as to the efficacy of a

*[margin note:]* A *certiorari* lies from the Supreme Court to remove the proceedings of two of the aldermen of the city of Philadelphia, under the act of 6th April, 1802. A person in possession may stay the proceedings of two of the aldermen to deliver posses- sion to a pur- chaser at she- riffs' sale, on making oath that he claims under the de- fendant in the execution by title derived before the judgment and tendering se- curity. Such oath is sufficient, if it contains a po- sitive aver- ment, that the title is derived from the de- fendant in the execution, be- fore the judg- ment, though it does not spe- cify when the title com- menced in possession. It is suffi- cient if the oath and re- cognisance are tendered at any time be- fore judg- ment.

1817.
LENOX
*v.*
M'CALL.

" a certain lease hereinafter referred to  as militating against,
" and destroying the efficacy of a regularly recorded mort-
" gage, in which the bond and warrant were recited, and
" bearing simultaneous date;" that the sheriff sold the pre-
mises on a *venditioni,* issued upon a judgment, entered on the
4th *February,* 1815, by virtue of  a bond  and warrant dated
*February* 4th, 1814, given by *Peter L. Berry,* together with a
mortgage bearing the  same date, regularly executed and re-
corded ; made to  secure the payment of  the said bond  and
warrant, and reciting the same.    That the plaintiff was the
purchaser, and had full notice at the time of sale of the
leases hereinafter mentioned, and of the bond, warrant of at-
torney, and mortgage ; that Mrs. *M'Call* was in possession
under two leases from *Peter L. Berry,* one dated 28th *April,*
1813, the other dated 5th *May,* 1814 ; that the plaintiff re-
ceived a sheriff's deed, gave notice to deliver up the pre-
mises within three months, and that the defendant had refused
to comply therewith. " Whereupon, the said *Judith,* excepted
" to the jurisdiction and proceedings of the said jury, in man-
" ner and form following :

<div style="margin-left:2em;">

" *David Lenox*  ⎫   Proceedings before *Michael Keppele*
    v.      ⎬   and *Jacob Baker,* esqs., and a jury by
*Judith M'Call.* ⎭   them summoned.

</div>

" *Judith M'Call,* against whom the above proceedings
are carried on, and now pending, excepts to the jurisdiction
and right of the above aldermen and jury to proceed against
her in this behalf, because, she saith, that at the time of the sale
of the premises in question, by the sheriff of the city and
county of *Philadelphia,* to *David Lenox,* above-named, the
same was held by her as tenant and lessee of *Peter L. Berry,*
the defendant in the execution by virtue whereof they were
sold, under a lease, which will not expire until the 1st *May,*
1817, and that she now is, and continues, possessed thereof,
under the said lease.

<div style="text-align:right;">" *JUDITH M'CALL.*"</div>

" *May* 14th, 1816.

Nevertheless, the said aldermen, after hearing counsel,
ordered the said proceedings to go on, and the said *Judith*
thereupon, tendered to the said aldermen, her affidavit, sworn
to before them, as follows :

" *David Lenox*
v.
*Judith M'Call.*

" *Judith M'Call*, the above defendant, being duly sworn, deposes, that she claims to hold the premises in controversy in this case, by title derived from *Peter L. Berry*, as hereafter stated, before the judgment rendered against him under which the plaintiff purchased. That on the 5th *May*, 1814, the said *Peter L. Berry*, in consideration of the sum of 1200 dollars, to him paid by this deponent's agent, *Richard M'Call*, demised the premises to this deponent for a term of years, commencing at the expiration of the lease she then held, and by virtue of which she was then in actual possession of the premises, and ending on the 1st *May*, 1817; and this deponent verily believes, she is legally entitled to hold the premises, by virtue of the said lease until the said 1st *May*, 1817.

" Sworn, &c.

                    " *JUDITH M'CALL.*"

And offered to enter into recognisance with sufficient securities conformably to the act of assembly passed on the 6th day of *April*, 1802, entitled, " an act to enable purcha-" sers at sheriffs' or coroners' sales to obtain possession," and to the act of assembly passed on the 14th day of *March*, 1814, entitled, " a supplement to an act to enable purcha-" sers at sheriffs' or coroners' sales to obtain possession." Nevertheless the aldermen aforesaid, refusing to receive the same, again ordered the trial to proceed ; whereupon, the said jury find for the plaintiff, the said *David Lenox*, and do assess the sum of 360 dollars for the damages of him, the said *David Lenox*, occasioned by the unjust detention of the premises. Therefore it is considered and adjudged by us, the said aldermen, that the said *David Lenox* shall recover, and have of the said *Judith M'Call*, as well the said sum of 360 dollars for his damages aforesaid, as 61 dollars 45 cents for his reasonable costs, in and about this suit in this behalf expended.

On the 21st *May*, a warrant was issued by the aldermen to the sheriff, to deliver possession of the premises to *David*

*Lenox*, and to levy the damages and costs ; and the posses-
sion was accordingly delivered.

*Delany* and *Rawle*, for the defendant.

1. A *certiorari* lies in this case to remove the proceedings
to this Court.   A *certiorari*, and not a writ of error, is the
proper mode of removing proceedings that are summary, and
not according to the course of the common law.   *Ruhlman* v.
*The Commonwealth*.(*a*)   In the analogous case of a pro-
ceeding under the landlord and tenant law, it was ruled by
this Court, that the judgment of the Court of Common Pleas
upon the proceedings of two justices is not final, but may be
brought to this Court by writ of error, *Clark* v. *Yeast*.(*b*)
Although the 1st section of the act of 6th *April*, 1802,
under which this proceeding took place, declares, that
the judgment of the two justices " shall be final and conclu-
" sive to the parties," yet these words do not take away the
jurisdiction of this Court ; and it is plain, that a *certiorari*
is contemplated in the latter part of the same section, as it
directs that no *certiorari* shall be a *supersedeas*, or delay of
execution.   *Purdon's Dig*. 622, 623.

2. This case is not within the law of 1802, nor if it is, have
the proceedings been legal.   Though the first section of that
act extends to persons in possession under a defendant, yet,
it is restrained by the third section, by which lessees
and tenants are protected, and the purchaser is constituted
landlord.   The defendant came into possession fairly, and
for a valuable consideration.   The mortgage could have no
influence, because there was no suit on the mortgage.   The
defendant had a lease made prior to the judgment, though
not to take effect till after.   She was, therefore, fully within
the purview of the supplement of 14th *March*, 1814.   *Pur-
don's Dig*. 625.   They cited *Pow. on Mortg*. 75. 77. 92. 1
*Ch. Cas*. 59. 3 *Cro*. 304. 4 *Johns*. 43. 6 *Johns*. 494.

*Wallace* and *Chauncey*, contra.

This is not a proper case for a *certiorari;* the act under
which the proceedings were had, declares, that the judgment
of the justices shall be *final* and *conclusive*, and that a *cer-
tiorari* shall be no *supersedeas*.   The act of 24th *March*, 1810,
sect. 24, expressly annuls any writ of *certiorari*, issued " by·

---

(*a*) 5 *Binn*. 24.                    (*b*) 4 *Binn*. 185.

"or out of the Supreme Court to any justice of the peace "in any civil suit, or action." The case of *Clark* v. *Yeast,(a)* was a different case and under a different law. The question there was upon the propriety of a writ of error.

2. It appears that judgment was entered against *Peter L. Berry,* on the 4th *February,* 1815, on a bond dated *February* 4th, 1814; which bond was accompanied by a mortgage of the same date. Mrs. *M'Call's* second lease, although dated prior to the judgment, was not to take effect till after, viz. 1st *May,* 1815. *Berry* could make no lease subsequent to the mortgage, which could affect the mortgagee. There would be great room for fraud, if a judgment against a mortgagor should not avoid leases made subsequent to the mortgage. The money raised by the sale of the house, was applied to the discharge of the mortgage, which was the same as if the sale had been under the mortgage. By the practice of *Pennsylvania,* if land is sold under a younger judgment, and applied to, the payment of elder judgments, it sweeps away all intermediate judgments, and of course all intermediate mortgages and leases. Mrs. *M'Call* has *Berry's* warranty; and he is the man who ought to suffer. The case is certainly within the act of 1802. Every fact required by the act has been found. It is objected, that by the 3d section, a person holding by lease under the defendant at the time of sale, is protected from being dispossessed. But the case of a tenant or lessee is included in the first section, giving this summary remedy; and the 3d section was introduced in favour of purchasers, to give them a remedy for recovering their rent from the lessee. On the adverse construction, any man may defeat the law by giving a lease after a judgment. But this matter is rendered plain by the act of 1814, which restricts the benefit granted by the law to persons claiming by title, to those whose title existed before the judgment. But the affidavit of the defendant does not sufficiently set forth the necessary facts to justify staying the proceedings. When a matter is to rest on the party's affidavit, it should be clear and full. It states that she claims to hold the premises, not that she is in possession under the defendant. It does not state the time of the judgment, nor when the lease was to commence in possession. It

states her title only argumentatively. The proper time for offering this affidavit was when the jury had found the facts. The act of 14th *March*, 1814, contemplates possession under a title before the judgment, by which is meant complete title, including possession, and free from all prior incumbrances.

*Reply.* The construction of the act of 1802, contended for on behalf of the plaintiff, would extend to dispossess every tenant. But a *bona fide* tenant is fully protected by the 3d section in all cases; especially where he claims by title prior to the judgment. As to the time of taking exception to the proceedings, it is immaterial at what time it is taken. If it appears at any time that there was no jurisdiction, the proceedings ought to stay. An exception to the jurisdiction was made before the jury gave their verdict. The act of assembly does not say when the affidavit should be offered. The defendant was not obliged to state in her affidavit that she was in possession; for she was proceeded against as being in possession. The affidavit is sufficiently certain. It states that she derived her title from *Berry* before the judgment, and what that title is. If the tender of the *affidavit* and recognisance were not sufficient to stay the inquisition, they were certainly sufficient to prevent the judgment, as they were tendered before the judgment was given.

TILGHMAN C. J. This is a proceeding under the act of 6th *April*, 1802, to recover possession of a house in the city of *Philadelphia*, sold by the sheriff, on an execution against *Peter L. Berry*. *David Lenox* was the purchaser at the sheriff's sale, and *Judith M'Call* was in possession, under a title derived from *Berry*. Aldermen *Baker* and *Keppele*, to whom complaint was made, by Major *Lenox*, summoned a jury agreeably to the act of assembly, who found for the complainant, with 360 dollars damages; for which sum and costs, judgment was given against Mrs. *M'Call*, and possession was delivered to the complainant. The proceedings were removed to this Court, by *certiorari*, and it is contended in the first place, by the counsel for major *Lenox*, the complainant, that the writ of *certiorari* is taken away by the 24th section of the act of 20th *March*, 1810. It is enacted, in that section, as follows :—" No writ of *certiorari*, issued by, or

"out of, the Supreme Court, to *any justice of the peace, in* "*any civil suit or action*, shall be available, to remove the "proceedings had before *such justice of the peace.*" This act of assembly was made, for the purpose of amending, and consolidating the several acts for the recovery of debts and demands not exceeding 100 dollars, before *a justice* of the peace, without a jury; and the 24th section relates to such cases, and not to proceedings before *two justices* for the recovery of the possession of houses or land. These *two justices* must call a jury to their assistance, so that it can with no propriety be called a civil suit, or action, before *a justice.* It was mentioned in the argument, but not much insisted on, that the act of 6th *April,* 1802, on which the proceedings were founded, takes away the *certiorari*, because it declares, that the judgment of the two justices shall be *final* and *conclusive to the parties.* But besides the settled principle, well known to the legislature, that these expressions do not take away the jurisdiction of this Court, it is clear from the subsequent part of the same section, that it was positively intended, the proceedings should be subject to removal by *certiorari;* for it is expressly provided, "that no *certiorari* "which may be issued, to remove such proceedings, shall be "a *supersedeas*, or have any effect, *to prevent or delay the* "*execution, or delivery of possession.*" The *certiorari*, therefore, was properly issued.

Having disposed of this preliminary question, the proceedings are to be considered. The counsel for Mrs. *M'Call* do not deny, that they were properly *commenced,* but they say, that after putting in an affidavit, which I shall consider presently, and a tender of *security*, the proceedings ought to have been *staid.* The act of 6th *April,* 1802, was made, to remedy an inconvenience which existed at common law. Where land was sold on an execution, if the person in possession refused to give it up, the purchaser was put to his ejectment. This was hard and unjust, where the person himself, against whom the judgment was rendered, was in possession, or any other person, claiming under him, by title derived *after the judgment.* The 1st section of this act gives a summary remedy, where the possessson is in the *defendant in the execution*, or *any person claiming under him.* But in order to guard against the summary removal of persons in possession, who might

not derive title from the defendant in the execution, it is provided, by the 2d section, that oath being made to that purpose, and security given for the prosecution of the claim of the person making such oath, *with effect*, at the next Court of Common Pleas, to be held for the county where the lands lie; the justices shall forbear to give judgment, &c. The 3d section relates to persons in possession, claiming by *lease* from the defendant in the execution, and Mrs. *M'Call's* counsel have argued strenuously, that this section protects all persons from removal, who are in possession by virtue of a lease, made *before* or *after* the judgment. It is unnecessary to decide this point, because the case will turn on another act of assembly, supplementary to the act before-mentioned, passed 14th *March*, 1814. By this supplement, it is enacted, that any person in possession under the defendant in the execution on which the land has been sold, by title derived to him, from the said defendant, *before the judgment rendered against him*, shall be entitled to all the rights, privileges and benefits, contained in the second section of the original act; and such person shall not be dispossessed by virtue of the first section of the said act. The meaning of this supplement is too plain to be misunderstood. The person in possession, may stay the proceedings of the justices, on making oath, that he claims under the defendant in the execution, *by title derived before the judgment;* provided security be given, as directed by the second section of the original act. The question then is not, whether the title of Major *Lenox* is good, under the sheriff's sale, but whether Mrs. *M'Call* made the oath, and gave the security required by law. It is certified by the aldermen, that Mrs. *M'Call* made an oath, and tendered security. The tender of security is equal to the actual giving of it. The aldermen refused to receive it, and nothing more could be done. The point then is narrowed to this. Was the oath such as the act of assembly requires? Mrs. *M'Call* swears, that " she claim-" ed to hold the premises in controversy, by title derived from " *Peter L. Berry, as hereafter stated, before the judgment* " *rendered against him,* under which the plaintiff purchased. " That on the 5th *May*, 1814, the said *Berry*, in considera-" tion of the sum of 1200 dollars paid to him by the depo-" nent, demised the premises to the deponent for a term of " years, commencing at the expiration of the lease she then

"held, and by virtue of which she was then in actual posses-
"sion of the premises, and ending the 1st *May*, 1817 ; and that
"the deponent verily believed, she was legally entitled to
"hold the premises, by virtue of the said lease, until the said
"1st *May*, 1817." The objection to this oath is, that it is not
positive, but argumentative. The date of the judgment is not
mentioned, nor the time at which the last lease was to com-
mence in possession. This is very true ; yet it appears to me,
that there is a positive averment of the title being *derived
from Berry before the judgment*, which is all the law requires.
At what time the second lease commenced *in possession*, is
not material, provided the contract was made before the
judgment. The title is *derived* from the time the *lease was
executed;* so that whether we consider that part of the oath
in which it is said, that the title was derived *before the judg-
ment*, or the subsequent part which goes into the particulars
of the title, it is, in substance, a compliance with the act of
assembly. A number of facts, not found by the jury, have
been mentioned in the record, drawn up by the aldermen ;
of these the court can take no notice; so that it is to be
understood, that we give no opinion upon the title of either
party. It has been objected, that Mrs. *M'Call*'s oath was not
offered at the proper time. There is nothing in that objec-
tion. In proceedings of this kind there are no formal plead-
ings. Every thing is done in a summary way. It appears,
that the oath and recognisance were offered before the ren-
dering of the judgment, and that is sufficient. The recogni-
sance ought to have been taken, and then the title would have
been tried in the Court of Common Pleas.

I am of opinion that the judgment was improperly entered,
and therefore the proceedings should be quashed.

GIBSON J. concurred.

DUNCAN J. This is the case of a *certiorari* calling on two
aldermen of the city of *Philadelphia* to certify their proceed-
ings to this Court. The motion to quash the *certiorari* having
been disposed of, the Court having declared that the super-
intending power of this Court is not taken away by any law,
nor could it be taken away but by negative words, it is to be
considered whether the judgment rendered by the aldermen
is erroneous or not. In other words, whether the aldermen

should, or should not, on the oath of Mrs. *M'Call,* and the offer to become bound by recognisance, have, in the words of the act which gave them jurisdiction, forborne to give a judgment.

I put out of view all the extraneous matter introduced into the return of this *certiorari;* inserted no doubt from the purest motives, and confine the inquiry to the precept, to summon the jury, and the party; to the affidavit of Mrs. *M'Call,* and the offer to enter into recognisance; the finding of the jury and aldermen; the assessment of damages by the jury, and the judgment rendered, and writ of possession; for this is all the record. The complaint of the purchaser at sheriffs' sale, and the finding of the jury and aldermen, bring the case within the provisions of the act of 6th *April,* 1802; and the purchaser is entitled to the summary relief afforded by that act, unless the tenant, under the act of 14th *March,* 1814, has brought himself within the benefits of the 2d section of the original act. " Any person or persons, in possession under the defendant or defendants, in the execution on which the lands and tenements have been sold, by title derived from the defendant or defendants, before the judgment rendered against him or them, under which the purchase may have been made, shall be entitled to all the rights, privileges, and benefits, contained in the 2d section of the act of the 6th *March,* 1802; and the said person or persons shall not be dispossessed, by virtue of the first section of that act."

It is stated in the whole proceedings, that Mrs. *M'Call* came into possession under the defendant in the execution on which the house and lots were sold; indeed, if this were not the case, all would be void. For it is only in such case this tribunal had jurisdiction. The inquiry before the aldermen could only be of this fact, and of the damages. The title of Mrs. *M'Call* formed no part of the inquiry. Whether derived before or after the judgment, was not for them to decide. Title was not for them to determine. This proceeding is in the nature of a summary ejectment. The original act intended to prevent delay in the tedious process of ejectment against the defendant, and all coming into possession under him. The deed of the sheriff duly acknowledged was made conclusive evidence; and the purchaser holding this deed, was, on giving three months notice, to be put in possession. But, if under the original act, the tenant in pos-

1817.

LENOX
*v.*
M'CALL.

session interposed a claim, on oath to be made by himself, that he did not come into possession, and doth not claim to hold under the defendant in the execution, and that the title is disputed and claimed by some person (other than the defendant), whom he shall name, and if such person, so claiming, shall forthwith or upon a summons immediately to be issued, returnable within 30 days, appear before the justices, and on oath or affirmation declare, that he verily believes he is legally entitled to the premises, and that he doth not claim by, from, or under the defendant in the execution, but by a different title, and shall become bound with one or more sufficient securities by recognisance to the complainant before the justices, sufficient to cover the value of the rents or mesne profits, and all costs and damages which may be expected to accrue, before the final decision of the said claim, conditioned to prosecute his claim with effect at the next Court of Common Pleas, or in case of failure, to surrender the premises, and pay the full value of the rents and mesne profits, then, and in such case, but not otherwise, the justices shall forbear to give judgment. It is provided, that if the claim is not prosecuted according to the recognisance, the recognisance shall be forfeited to the use of the complainant, and the justices shall proceed to give judgment, and cause the lands to be delivered to the complainant.

It is contended on the part of the tenant, that she holding under a lease is not subject to this summary process ; that in the country this would lead to most mischievous consequences, and be highly prejudicial to agriculture ; that it would lock up from use all the property owned by the person against whom judgment would be obtained, as the lessee might be turned out at an unreasonable time, be deprived of his crop, and lose the labour of a whole year, and be without a habitation to receive him. The answer to this is, that no contract between him and the debtor can deprive or delay the creditor of the benefit of his judgment, or the purchaser at sheriffs' sale of the benefit of his purchase; that a lease can no more deprive them of their rights than a conveyance in fee simple ; that a debtor after judgment might give a lease for any number of years, receive the whole rent in advance, and thus deprive the purchaser of all benefit from his purchase, until after the expiration of a long lease.

VOL. III.—O

But the case of a lessee is not distinguished, by any of these statutes, from any other person who has come into possession under the defendant. All persons are included in the first section. The second section protects from dispossession in this summary mode, persons who come into possession and claim to hold under others than the defendant. The act of 1814 protects those who come into possession under title derived from the defendant before judgment rendered. Lessees are therefore subject to the operation of these laws. If this were not the case, these wise provisions might be easily evaded. Indeed, they appear to be expressly included ; for the purchaser is entitled to the rents accruing from the time of the purchase.

By the counsel for the complainant it is contended, that this oath, and the offer of security, and to enter into recognisance, were improperly made; made at an improper time, and at a time when the aldermen were bound to proceed. If the tenant was bound down to a particular time, it might puzzle the soundest lawyer to say what that time was. Is it to be instantly before the jury are empannelled, that the objection is to be made to the jurisdiction? Is it to be after and before the finding of the facts? Is it to be after the facts found, and before the assessment of the damages? Or, is it to be after the assessment of damages and before judgment? It is evident that the interposition of the claim does not prevent the inquiry and assessment of damages ; for all *that* is to be completed, that the justices, on failure of prosecution of claim by the tenant, may proceed to give judgment, and cause the possession to be delivered to the complainant. And it is equally clear to me, that if this interposition of claim on oath, and offer of recognisance, is made any time before judgment, it is the duty of the justices to forbear giving judgment, as it is expressed in the second section of the original act ; and, as it is expressed in the supplement, such person shall not be dispossessed by virtue of the first section of the act of 6th *April*, 1802.

This is not a matter of special pleading ; here is no oyer, essoin, or imparlance ; here is neither plea in abatement, to the jurisdiction, in bar, or after the last continuance.

The objection would have great weight, and be unanswerabl if the tenant did not make it in time ; if he waited till after the judgment. But here it is, not that it was made

too late, but that it was made too soon. The aldermen and jury should have gone on and completed the inquisition; and then the aldermen should have forborne to give the judgment, and dispossess the party. It would be placing parties too much in the power of justices of the peace, if this were not the law. The party, after the testimony has closed, withdraws; he is not present at the finding or assessment of damages: directly after this the judgment is rendered, and his lips are sealed. If he makes the oath and offer of recognisance before the finding, he is too soon; if he waits but a little time after, he is too late. All the facts are stated to have been found when the oath and recognisance were offered; and the aldermen, after this, ordered the proceedings to go on.

But objections are likewise made to the oath—that it is not sufficiently positive, but argumentative.

1. It does not state that she came into possession under the defendants. That was unnecessary. The complainant stated that; it is contained in the finding. Without the establishment or admission of that fact, all was *coram non judice.* Besides, the act of 1814 does not require that the tenants *should come into possession under the defendant before the judgment,* but any person *in possession under the defendant by title derived before the judgment.* It is not required that the possession shall be before the judgment, but the title. One who had a lease, *bona fide,* before the judgment, who entered after the judgment, is within the protection of this act.

2. The oath is objected to, because of its reference to the manner in which the title was derived. Mrs. *M'Call* deposes that she claims to hold the premises by title derived from the defendant in the execution, before the judgment rendered. This is positive. She then proceeds to state how; "that on the 5th *May,* 1814, *Peter L. Berry,* the defendant "in the execution, in consideration of 1200 dollars, to him "in hand paid, demised the premises for two years, com- "mencing at the expiration of the lease she then held, and "by virtue of which she was then in possession, and ending "on the 1st *May,* 1817." This title was derived from *Peter L. Berry,* on the 5th *May,* 1814, before the judgment, which was on the 4th *February,* 1815. This is sufficiently certain, nothing can be more so. She states, positively, the fact of

1817.

LENOX
v.
M‘CALL.

claiming to hold under title derived from *Berry* before the judgment. She then states, that the title is founded on a lease of 5th *May*, 1814; which lease was to expire on the 1st *May*, 1817. It was not necessary for her to state that she came into possession before the judgment; her title must be derived before the judgment. She was in possession at the time of the sale, the notice, the inquisition, under *Berry;* and her title was derived from *Berry* before the judgment rendered against him. It was not required by the act, that the possession should be before, but that the title should be derived from the defendant before. I am therefore of opinion, that the judgment rendered by the aldermen be reversed.

<p align="center">Proceedings quashed.</p>