The opinion of the .court was delivered by
Duncan, J.
The reference in the bill of exceptions to the notes of- the four counsel concerned for. the parties, and the notes of the ‘evidence of the judges before whom the cause was tried, does not answer the design of a bill of exceptions, which is, to desire the opinion of the court on certain points of law propounded to them on some given state of evidence. To refer then to the notes of six *91 . gentlemen, however accurate and correct they may be in noting the evidence, cannot be said to afford a precise statement of facts. The • notes will not always agree, nor is it to be expected that they should. If they disagree, what is the reviewing court to do? They cannot decide upon their relative accuracy and exactness. Besides, it is imposing on the court above a task which their duty does not require of them, of wading through volumes of notes, where only a small portion of them relates to the particular point, in which the opinion of the court is required. _ This, besides consuming time unnecessarily, creates confusion, and incertitude as to the facts; for the bill does not draw the whole matter into examination, but only the point on which it is taken. So much difficulty may not arise in the present case, inrelationto which,I donotparticularlymake theobser-vation, but with reference to a practice which ought'nót to be countenanced. It saves a little labour at the moment, but finally wastes much time. .There is no doubt from the whole record, but that the plaintiff below, defendant in error, is the owner of the property in question: that is, he has the title to it; for cestui que trust can in this state sustain ejectment in his own name. But one man may have thé right of possession, and the other the right of property, and the right of possession is the sole inquiry in ejectment. The defence set up by the plaintiff in error, defendant below, was,; that the property was levied on by the sheriff, as the estate of the defendant in error, at the suit of Jacob Mooney; that an inquisition was. held, that it would pay the debt and damages within seven years, as was found by the inquisition; that a liber ari facias issued, on which it was returned, executed, and possession delivered to the plaintiff in the judgment. The plaintiff in error offered to prove this by the record and return of the sheriff, (the inquisition annexed to the liber ari facias being in blank as to the day and year in which it was taken by the sheriff and jury, viz. on the-■ day of March, one thousand eight hundred-.) This was objected to, and the plaintiff offered the sheriff’s docket to prove.that it was executed-March, 1818. This evidence was overruled, and I cannot say there was error in this. It was the mere private book of the sheriff; the transaction was a recent one; and there had been no actual correspondent possession. But the defendant below further offered to prove by the witnesses, that the judgment was executed on the-day of March, 1818, and this was likewise refused. This evidence was competent. It was impossible that the inquisition could have been taken in March, 1800: there had been then no judgment; tire teste of the liberari facias was 1818. Thomas Truxton was not the sheriff in 1800. . This inquest was not a judicial act and record of the court. The sheriff was out of office — was dead — there could be no order to amend or amendment made. The day on whichit was taken was notamatter of absolute verity as a record of the court, but a matter merely inpáis. If it had even stated a precise date, the mistake could be put right, and parol evi *92 dence admitted to show when it was really done. Indeed it required no explanation. The evidentiarei was sufficient to show the real year — that it was 1818, and not 1800. But to remove all doubt, it was competent to the plaintiff to show, by the jurors or others, the year in which it was executed. This however would have gone but a little way, it would not have placed either title or possession in Mooney; for the return of the sheriff, as the court very properly instructed the jury, did not prove an actual, but a virtual delivering of possession. On the execution of the liber ari facias, the sheriff is Jo' deliver to the creditor the premises, in the same manner as lands are delivered.on writs of ejecUnent in England. But this delivering is no more than an authority to enter, and the creditor must bring an ejectment, 4 Mod. 48. 1 Crompt. Pr. 363. Addison, 103. State v. Kirkpatrick and another. By act of 13th April, 1807, Purd. Dig. 262, on the execution of a libe-rari facias, where the defendant, or his tenant is in possession, the sheriff shall deliver the actual possession thereof to the plaintiff, or his agent. When the liber arifacias was executed, the defendant in error was not in possession, nor the plaintiff in error considered as tenant-: it is however certain that neither was dispossessed. Itis not pretended that any possession was really delivered to Mooney, or any further prosecution of his judgment and execution, nor was there any connection then or now between Mooney and the plaintiff in error, or any claim set up by Mooney. And though it be true, that the tenant in possession may sot up an outstanding title in a stranger, yet it must be a subsisting one. The title could not be said to be in Mooney. -He has not taken the possession, nor has he made any entry. The proceeding is altogether inchoate: it cannot, be compared to. a sale by the sheriff, and deed executed and acknowledged, for that vests the absolute title in the purchaser. There is no error in this instruction to the .jury-:, it was not a bar to the plaintiff’s recovery. Besides these reasons, there is another very competent one. The plaintiff in error was considered as the tenant of defendant, as. coming into possession and holding under him, under some contract held to be binding, either made by authority of the defendant in error or ratified by him. Among the conditions was one, that the plaintiff in error, should be reimbursed for the repairs he might make. Now it is admitted, that when the action was brought, he had not been reimbursed, though at the time of trial he was. At any rate it was left to the jury, to find whether he was reimbursed’ at the time of trial, and if they found he was, then whether he was reimbursed or not at the time of action brought, the court said was altogether immaterial, and they should find for the plaintiff below, the defendant in error, with costs. If this were a' matter all. in equity, the plaintiff in error having a legal right both.to the property and to the possession, and the defendant but a mere equity, the cases.of Moody v. Vandyke’s lessee, and Wharf v. Howell, might apply. But this is not the case here, for Thomas held as a tenant to the defendant in error; *93 a- tenant who had a lien for the sum beyond his rent which he had advanced in repairs; he had a right to hold the possession until he was paid. It was the duty of Wright to call on him for his account, and tender him the balance. Wright could not thro w up the possession and sue Thomas for the repairs. The dissolution of the demise depended on Wright, by giving notice to Thomas, calling for his account, and paying or tendering him what was due for repairs. But there is another objection in the way of the judgment. If Thomas held the possession under a contract with Wright, or as his tenant for an uncertain time, then most certainly Wright could bring no action against him to recover the possession without notice to quit. He had lived on under the contract for several years. It would be then a lease from year to year. In either case, a contract for an indefinite possession in point of time, or a holding over which would amount to a lease from year to year, the action could not be sustained without a notice to quit. It was, in contemplation of law, a lease from year to year, and if it depended on the pleasure of Wright to end *it, he must give notice to quit, Bedford v. M‘Ilherron, 2 Serg. & Rawle, 50. And if a lease be for one year, and the tenant is afterwards permitted to remain from year to year, a notice in the first month of a new year is illegal; the tenant has a right to hold for thatyear, Fahnestock v. Faustenhauer, 5 Serg'. & Rawle, 174. The error of the District Court consists in supposing, that Thomas had but an equity, and Wright, the right to the possession. Now the court had before stated, that Thomas stood in the light of- a tenant to Wright-, and could not set up even a good outstanding title. All this was very just, but it followed that being a tenant, and not allowed to set up an outstanding title, he was the legal tenant, andbeing subjeCfto the incapacities of a tenant, to controvert the title, he was entitled to all the privileges of a tenant. This possession was a legal one, and his term did not expire until he had notice to quit. If the plaintiff had a perfect cause of action, against which the defendant had no defence at law, but defended himself on the equity of his case, all which equity had been removed since the commencement of the action; then indeed, the court, exercising Chancery powers would only interpose to prevent the plaintiff from recovering costs, which would depend altogether on the special circumstances of the case, on a variety of circumstances peculiar to every case: as here the readiness.of the party where called, upon seasonably to deliver up possession, on-payment of reasonable expenditures. But as he was not called upon, nor any demand of possession or offer to ádjustthe amount due, Ido not feel the equity of burdening the defendant with costs. See Hart v. the executors of Porter, 5 Binn. 223. In Pennsylvania, ejectment is frequently made use of to serve the ends of a bill in equity, and. in the exercise of the blended jurisdiction of law and equity, our courts from necessity exercise the power by directing a verdict on equitable terms. But here the plaintiff had no right to the possession in point of law. The defendant had *94 no necessity to call on the court to interpose their chancery powers to relieve him on some principle of equity; for if he was, as they considered him, a tenant, then until -notice to quit had been given, and offer to pay for the repairs beyond the rents had been made, he stood firm on legal grounds.
Judgment reversed.