IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT, MAY TERM 1834.

## Hale *against* Henrie.

2w143
157  307
2 W   143
208   232
e208  ¹339
208   ¹341

In order to effect the title or possession of land, it is not competent to show by parol that a deed to two persons as tenants in common, was purchased and paid for by them as partners, and was partnership property. When partners intend to bring real estate into a partnership stock, that intention must be manifested by deed or writing placed on record.

In a proceeding which originates before two justices of the peace to obtain possession of land sold at sheriff's sale, and the same is brought into the common pleas, the only matter in issue is the title averred by the defendant in his *affidavit*, by which the proceeding is taken from the jurisdiction of the justices.

Upon the trial of such an issue, the defendant will not be permitted to show, that the judgment on which the land was sold had been paid, although the purchaser who sought to recover the possession was the plaintiff in that judgment.

The omission of any material part of an inquisition may be corrected by parol evidence.

APPEAL by defendant from the circuit court of *Dauphin* county, held by GIBSON, Chief Justice.

Benezer Hale, the plaintiff in this case, recovered a judgment againt George Capp and another, in the court of common pleas of Dauphin county, on the 29th of November 1830, for the sum of 2500 dollars, with stay of execution for two years, and issued a *fieri facias* to November term 1832, which was levied on the undivided half of a lot of ground and stable thereon, situate in Harrisburg.

An inquisition was held, finding " that the rents, issues and profits are of a clear yearly value, beyond all reprises, sufficient, within the space of seven years, to satisfy the debt and damages." This, it was alleged by the plaintiff, was a mistake in drawing up the inquisition; the jury intending to return that they were *not* sufficient, and to condemn the property. A *venditioni* was issued to January term 1833, on which the property was sold to the plaintiff, who received a sheriff's deed, on the 12th of February ensuing. The plaintiff, in November 1833, instituted proceedings against the defendant, then in possession of the stable, before two justices, under the act of the 6th of April 1802, in order to obtain possession. The defendant claimed title in himself, different from that of Capp, and as not holding under him, and entered into recognizance with surety, conditioned to appear at the next court of common pleas, to prosecute his claim with effect.

The proceedings being filed in the court of common pleas, the case was removed to the circuit court, where the plaintiff filed a *narr.*, claiming to recover the undivided half part of a frame stable and lot of ground situate in Third street, in the borough of Harrisburg, adjoining property of Michael Burke, &c. The defendant pleaded not guilty, and issue was joined. In the circuit court a verdict was rendered in favour of the plaintiff.

It appeared that this lot of ground and stable were purchased by George Capp and Nathaniel Henrie, and a deed made to them as tenants in common, on the 10th of June 1829.

Defendant offered to prove that Nathaniel Henrie, the defendant, and George Capp, the person as whose property the property in dispute was sold, were in partnership in the livery business in Harrisburg; that they purchased the said property out of the partnership funds for partnership purposes, and used it as such from the time of purchasing to the dissolution of the partnership ; that at the time of dissolution, the said property was left in the possession of the said Nathaniel Henrie, by the agreement of George Capp, for the purpose of discharging the partnership debts ; that the said Nathaniel Henrie, by the agreement of himself and George Capp, was to settle the partnership accounts, and pay off the partnership debts; that the debts owing by the said firm of Capp and Henrie exceeded the amount of debts due the firm and the value of the property in dispute. And further, that the plaintiff, Benezer Hale, before the time of taking his judgment against George Capp and James Murray, which has been given in evidence by the plaintiff, had notice that the said property was so purchased by the said Capp and Henrie, and left in the possession of Henrie for the purposes aforesaid. The defendant further offers to prove, that George Capp, one of the defendants in the said judgment, which has been given in evidence, sold out an interest he had in his livery, in partnership with James Murray, to a certain Samuel Murray; that during the treaty between said George Capp and Samuel Murray, for the sale of said interest,

[Hale v. Henrie.]

Benezer Hale, the plaintiff, was present, and promised to Capp, that if he sold to Samuel Murray, he would take Samuel Murray for the debt due by him, the said George Capp, on the same judgment; and that in pursuance of the said agreement, the said George Capp, after the sale to said Samuel Murray, gave an order to the said Benezer Hale on Samuel Murray, which was taken by the plaintiff, Benezer Hale, in satisfaction of the debt due to him by George Capp by said judgment; on which this property in question was afterwards sold and purchased at sheriff's sale, by plaintiff, Benezer Hale.

This testimony was objected to by the plaintiff, and rejected; and the jury, by direction of the court, found a verdict for the plaintiff.

*Krause* and *Foster*, for appellant.
*M'Cormick*, for appellee.

The opinion of the Court was delivered by

SERGEANT, J.—The title set up by the defendant professes to be paramount to that of Henrie in his separate capacity, and to defeat the plaintiff's execution, by showing that, although the deed to Capp and Henrie was to them as tenants in common, and, therefore, on its face, each held an undivided moiety; yet, in fact, they held the property as partners, pledged to partnership creditors, in exclusion of the plaintiff, who was a separate creditor of one partner. Such a trust or ownership of the property is inconsistent with the title on record, which is vested in them as tenants in common. To permit a person, apparently owning property as an individual, to aver a different right in himself as partner, by which his relations to creditors and others are to be affected, would defeat the statute of frauds and perjuries, by which no interest in real estates (except a lease for a short period) can vest or be transferred, without deed or writing. It would even be worse than to pass real estate without writing: since a deed would thus express one thing and mean another; and our recording acts, instead of being guides to truth, would be no better than snares.

The policy of the recording acts, which began with the settlement of the state, and which long experience has proved to be beneficial, is to render the manner in which an interest or right in real estate is held, in every respect, open and notorious. They require all deeds or writings which may affect lands, to be placed on record; and, as the statute of frauds forbids such interest to be held or transferred without deed or writing, the system is thus complete. No averment of any right by parol, or by, what is still less, the nature of the fund which pays, or the uses or purposes the property is applied to, can be allowed to stamp a character on the title inconsistent with that appearing on the deed and record, to the prejudice of third persons.

It has been held by our courts, that a person purchasing land with the money of another, accompanied with evidence of his intent

that it should belong to that other, has been deemed to create a resulting trust by operation of law.   Gregory's lessee *v.* Setter, 1 *Dall.* 193; Wallace *v.* Duffield, 2 *Serg. & Rawle* 525 ; German's lessee *v.* Gabbald, 3 *Binn.* 304.   These cases have been relied on by the defendant's counsel as authorities to sustain the argument, that a trust was here created by operation of law.   They form, however, cases of a peculiar character, and one principal ground of them is, that not to give effect to the trust would be to sanction a fraud.   But the money with which Capp and Henrie purchased the property was their own.   They could appropriate it as they pleased, and they chose to appropriate it to a purchase for themselves individually, and not as partners.   Having done so, it cannot be defeated by proving, otherwise than by deed or writing, that they held as partners.   If a person should employ his own money in purchasing land, and take the deed to himself, it could not be pretended under our statutes, that another would acquire a title to it by proving that such person had intended the land for him, however strong the evidence of parol declarations or acts *in pais* might be, short of· part performance by delivery of possession.

It has been contended here that there was a part performance by delivery of possession of the whole stable to Henrie, after the dissolution of the partnership.   But the allegation of title, as partners, is not founded on any parol agreement or declaration, but on a supposed inference of law, from the acts of purchasing with partnership money, for partnership purposes, and using it as such : and if that foundation fails, a delivery of possession would be of no avail, for the rule requires a parol agreement, or declaration, to be first distinctly proved. The exceptions to the statute of frauds have gone far enough : and it seems agreed that there would be more danger in extending than in limiting them.

Again, in respect to the delivery of possession, it does not appear, by the defendant's offer, when the dissolution took place, and Capp left the premises; whether these occurred before or after the plaintiff's judgment.   If after, it was out of the power of Capp, by any act of his, to defeat the plaintiff's lien.   If before, it would seem it was a delivery to the defendant as a mortgage or pledge for the payment of the, partnership creditors, not a sale or transfer to him :  and to the latter the doctrine of part performance is confined.   A mortgage in this state cannot be made by parol, even if accompanied with delivery of possession: it must be evinced by some deed or writing.   Bowers *v.* Oyster, 3 *Penns. Rep.* 240.   The alleged notice to the plaintiff, therefore, had no operation, and left the matter where it previously stood.

In conformity, therefore, with the suggestion of Chief Justice Tilghman in M'Dermot *v.* Lawrence, after a review of the American and English cases on the subject, (and, I think, in accordance with the course of legislation in Pennsylvania on the modes of acquiring title to real estate) where partners intend to bring real estate into the

[Hale v. Henrie.]

partnership stock, we think that intention must be manifested by deed or writing, placed on record, that purchasers and creditors may not be deceived.

The defendant further offered to prove that Capp sold out his interest in the livery to Samuel Murray: that the plaintiff was present at the negotiation for the sale, and promised Capp that if he made the sale he would take Samuel Murray for the debt due on his judgment: that Capp accordingly, after the sale, gave the plaintiff an order on Samuel Murray, which was taken by the plaintiff in satisfaction of the judgment.

After a sale on *venditioni,* and sheriff's deed acknowledged, the purchaser is ordinarily entitled to the land purchased and paid for. The sheriff's deed is conclusive evidence of the right and possession, against the defendant in the execution, and all claiming under him after the judgment. If there are matters of defence accruing subsequent to a judgment, and prior to a sale, such as payment and satisfaction, or release, the defendant may obtain relief by motion to the court to stay proceedings, or to set aside the process, or, perhaps, to stop the acknowledgement of the sheriff's deed; but these matters cannot be set up to defeat the purchaser's right to possession under the deed. The act of 6th April 1802 gives a summary remedy to obtain possession, instead of the former dilatory proceeding in ejectment, and the sheriff's deed is expressly made conclusive evidence of the purchase.

When persons claim by title paramount to the judgment, whether derived from a third person, or (by the act of 14th March 1814) from the defendant, prior to the judgment, they may, on making *affidavit* and entering into recognizance, stay the proceedings before the justice, and have their title tried in the court of common pleas. But this is all the act allows them to do. They can try nothing else. If they succeed in establishing their title, the proceedings are stopped: if they fail, they are bound by their recognizance to surrender up the premises, and the justices are empowered to give possession to the complainant. *3 Serg. & Rawle* 107; *13 Serg. & Rawle* 278. It is plain, therefore, that they come into court as actors or prosecutors; they assert a title, and are bound to substantiate it. Nothing else is in issue. The defendant could not go into evidence of any thing but his title, as averred in his *affidavit;* and if he failed to make that out, he had no right to travel into the matters proposed.

It is supposed that the circumstance of the plaintiff being the purchaser, distinguishes the case from the general rule. The act of assembly, however, applies to all purchasers, whether plaintiff or others. The same inconvenience would result in every instance, if the single issue in this proceeding were intermingled with other disputes, such as whether the plaintiff ever made the promise stated, whether the alleged order was satisfaction and payment of the judgment, and various other matters arising from throwing open the door for the investigation of every thing which the party had omit-

[Hale v. Henrie.]

ted to bring forward in due season, and in regular order.   This point has heretofore been decided in the case of Arnold *v.* Gorr, 1 *Rawle* 227 ; when it was held, that there is no difference whether the purchaser of land at sheriff's sale be the plaintiff or a stranger.

The observations already made apply to the objection of the defendant to the omission in the inquisition.   An inquisition being a matter *in pais,* the omission of any material part, by mistake, might be corrected by parol evidence.   Thomas *v.* Wright, 9 *Serg. & Rawle* 87.   The circumstance that no interposition took place to prevent a sale and conveyance of the property by the sheriff, affords a strong presumption that it was by mistake of the jury, and not by design, that the omission occurred, and that on due inquiry it would have so appeared.   But, at all events, on the express words of the act of assembly, and the principles before stated, I think the present defendant cannot take advantage of it on this issue.

Judgment of the circuit court affirmed, and judgment for plaintiff.