*Court of Common Pleas, Dauphin County, December 13th*, 1856.

### IN THE MATTER OF ERB & MATTER'S ESTATE.

Where land, purchased with partnership funds for partnership purposes, was conveyed by articles of agreement to the partners as tenants in common, a judgment creditor of one of them has a lien on this property.

BY THE COURT.—From the facts presented by the auditor's report in this case, it appears that Erb and Matter entered into partnership in a store and the clothing business, and in order to carry it on with convenience, purchased a lot in Wyconisco for the sum of two hundred dollars; $20 paid in hand and $180 to be paid in one year, provided they built a house thereon. The evidence satisfies me that the lot was purchased for partnership purposes and with partnership funds, the house built and paid for with like effects, and when constructed was used for their partnership purposes. No deed was made for the lot; but an article was entered into by which the vendor contracted that, on being paid in full, he would convey to the said Jonathan Matter

[In the matter of Erb & Matter's Estate.]

and Emanuel Erb, their heirs and assigns, a deed for the lot in fee simple.  This contract, from its wording, imports that the deed was to be made to them as tenants in common; although we are well satisfied that it was the intention of the vendors to purchase as partners.  They unfortunately employed a scrivener who did not know the difference between an estate held jointly by partners as partnership property, and a tenancy in common; consequently the articles do not properly express the intention of the parties.  No deed has yet been executed; and one point to be solved is, can the vendor and vendees, by having a deed made according to their actual intention, correct this supposed error in the articles after a judgment obtained against Erb?  If they can, have we authority in the present case to consider it corrected?  The evidence satisfies us that the payments on the lot were made out of the partnership effects, and the house was constructed solely from the same means.  Therefore, equity would say that this should be treated as partnership property, raising a resulting trust in favor of the firm as in all other cases of the payment of money.  There is no clearer principle in equity than that which raises a resulting trust in favor of him whose funds paid for real property; and slight declarations have been considered sufficient to enable the *cestui que trust* in such cases to recover the land, even against the legal title.  Where partners had taken a deed to themselves as tenants in common, and it appeared that the estate was purchased with partnership funds, the Supreme Court of Massachussetts held that there was a resulting trust in favor of the partnership (Dyer *v.* Clark, 5 Met. 562).  The same principle is reiterated in Howard *v.* Priest (Ibid. 582); and the general propriety of the rule that partnership property, whether real or personal, shall be applied to the payment of partnership debts before the private claims against either of the partners can be permitted to come in, is strongly vindicated.  There is no principle better settled in Pennsylvania than that partnership property shall be applied to the payment of partnership debts in preference to any claim against either partner, so far as regards the personal effects of the firm; but a difficulty has been raised in relation to the real estate, our courts holding that it shall be considered as belonging to the respective partners as tenants in common, unless they have placed on record a writing showing that it was held by them as partners, in which case it has been controlled by the same rule which governs the personal chattels (1 H. 545).  Why the recording act should have been applied to cases of this character we are at a loss to understand; as the failure to record any instrument concerning land only renders it void in favor of *bonâ fide* purchasers and mortgage creditors.  It has never been so held in favor of judgment creditors, who are supposed to rely on the personal security of the individual, and not upon their lien on the

real property (4 Y. 111; 2 Binn. 40; 1 Barr, 493). Though a purchaser at sheriff's sale is protected (2 Binn. 40), a purchaser of land held by article acquires but an equity, and, as he buys an imperfect title, is bound to take notice of the legal estate and countervailing equities, and cannot claim to stand on the same footing with one who buys a legal title (7 Barr, 165). It is a rudimental principle, that one who buys an inchoate or imperfect title must stand or fall by the title of the person whose estate he purchased. (Sergeant *v.* Ingersoll, 7 Barr, 345). The lien claimed here was entered against Erb, who held a mere equity under the articles, and although the words of that instrument, if in a deed, would unquestionably have passed an estate in common to Erb & Matter, yet an article may be reformed by parol, and a deed may be executed so as to carry into effect the actual intention of the parties; nor will it receive the same construction as a deed (Defraunce *v.* Brooks, 8 W. & S. 67). In that case it is decided that words in an executory contract convey a fee, which in an executed one were decided to pass a life estate in Gray *v.* Parkes (4 W. & S. 17). A judgment creditor does not stand on the same footing with a mortgage or *bonâ fide* purchaser in regard to reforming written instruments by parol evidence, as he is not considered at all interested in the subject-matter attempted to be reformed. He has neither a right *in re,* nor *ad rem;* and can no more object than can the parties themselves (1 Barr, 403; 1 P. W. 277). His judgment is only a general security (2 P. W. 491). He is supposed to look to the goods or person of his debtor; and if he intends to rely on the land as security, should have taken a mortgage (2 Ves. Sr. 662). It is somewhat questionable, whether a different rule does not now prevail in Pennsylvania, even in the case of an article; as it is clearly settled that, as against a judgment creditor, parol evidence will not be received to show that a *deed*, made to men as tenants in common, should have been to them as partners, the estate having been purchased with partnership effects (3 H. 181). Though it is true that the creditor there held a mortgage also; but that circumstance is not adverted to by the court. Why it should have been so decided, I confess, is beyond my comprehension. If a person brought a suit for the recovery of a tract of land, averring a resulting trust in his favor on account of his money having purchased it, could a judgment creditor interpose an objection, and complain that, if the land were recovered, his judgment would be cut out? Such an objection was never heard of either in a court of law or equity; and yet there is no doubt but that a *bonâ fide* purchaser or mortgagee could interpose that objection, and their claim would be held good, even if the claimant in the action had furnished the money to buy the property. Although the deed is not to be altered by parol evidence, except in clear cases of fraud

[In the matter of Erb & Matter's Estate.]

or mistake, yet a resulting trust in favor of the partnership can be be raised by parol, on showing that the funds of the firm paid for the property. This is decided in Dyer *v.* Clark, already cited, and also in 2 Barb. Ch. Rep. 167; Ibid. 336. The rights of a *bonâ fide* purchaser or mortgage creditor are, however, protected. The same doctrine is clearly settled in England. The courts of New York have gone a step further, by deciding that where a partner purchased real estate, in his own name and with his own funds, but extensive buildings were erected on it for partnership purposes, with partnership effects, the creditors of the firm were entitled to protection to the extent of the improvements, as against the creditors of the partner owning the property (Averill *v.* Loucks, 6 Barb. S. C. Rep. 19; 2 Barb. Ch. 167). Such owner is considered as trustee for the firm, *pro tanto*. Where a partner buys real estate with partnership funds, and takes the deed in his own name, he is clearly a trustee for the partners, and the proceeds arising from the sale of such estate must go to the partnership creditors (10 Leigh, 406; 3 Kent. Com. 37; 2 Wash. C. C. Rep. 445). And a like rule prevails when the deed is to the partners as tenants in common (4 Met. 541). In England, land purchased for partnership purposes with partnership effects, is treated for almost every purpose as personal property, and disposed of accordingly for the benefit of the firm or its creditors (Gow on Partnership, 48, 49, 51, and the authorities there cited; Story on Contracts, 126, and notes; Story's Equity Jurisprudence, s. 674; 3 Kent. Com. 37). Although the estate of the partners is recognized as a tenancy in common or joint tenancy, according to the terms of the deed, for all purposes of descent, distribution, or survivorship, after the partnership affairs are closed, yet in marshalling the assets among creditors, and as between the partners until the settlement, it is treated as personalty. A *bonâ fide* purchaser or mortgagee from one of the partners will take his interest according to the terms of the deed; but one who buys or receives a mortgage with notice takes no more interest than remains in his vendor or mortgagor after a final settlement of the partnership concerns (Brightly's Eq., s. 207, 208). And the erection and use of buildings for the business of the partnership would be, under most circumstances, strong evidence of actual notice. The first case in Pennsylvania, in which this subject appears to have undergone judicial investigation in the Supreme Court, is McDermott *v.* Laurence (7 S. & R. 438), where Tilghman, C. J., to some extent, recognizes the English rule in regard to real estate, purchased for partnership purposes, being first applied to the payment of partnership debts; although its application was very correctly refused in that case, the claimant being a *bonâ fide* mortgagee of one of the partners, without any notice of the firm being interested. The principal English authority referred to is Riply *v.* Waterworth (7 Ves. Jr.

[In the matter of Erb & Matter's Estate.]

424), where the land was held to be chattels for partnersnip pur-
poses; and the contrary case in the same book, page 453, where
it was treated as land. This last case is since overruled, and is
not now recognized as authority. In the case of McDermott *v.*
Laurence it is very manifest that the Chief Justice considered the
mortgagee protected by the recording act, which appears both from
his course of reasoning and the authorities relied on, particularly
4 Mumford, 316, which is a sound exposition of the law: The
court having held that a *bonâ fide* purchaser of the interest of one
of the partners, without any notice of the equitable lien of the
others, would take the property discharged from the debts. It is
true that the learned judge also cites with approbation Coles *v.*
Coles (15 John. 159), which would certainly not at this day be
recognized as the law of New York, where the estate of the de-
ceased partner owed the firm; and 11 Mass. 469 is now entirely
repudiated in Massachusetts. The Chief Justice, with his custom-
ary caution, intimates that where the intention is to hold the real,
as personal estate for partnership purposes, it would be *prudent* to
put their agreement to that effect on record; but he nowhere says
that it is necessary. Hale *v.* Henrie (2 Watts, 147) is a case of a
different character. There the *dictum* of Judge Tilghman, that
the agreement should be placed on record, is fully carried out;
and it is declared that the intention to bring real estate into the
partnership stock must be manifested by a writing duly recorded;
otherwise it must, for all legal purposes, remain land. That there
is nothing in the recording acts requiring this as regards a judg-
ment creditor, I consider, is demonstrable. That it is correct in
relation to *bonâ fide* purchasers and mortgage creditors is equally
clear. The court of last resort can declare the law, and it is bind-
ing on all inferior tribunals; but in the case under consideration,
they have *made, not declared it.* We must concede that it would
be improper to contradict the deed by parol, and show that an
estate granted to two persons as tenants in common, as expressed
in the deed, was in reality to be held by them as personal property
for partnership purposes, and not as stated in the writing; but
that is not necessary, nor was it permitted in any of the reported
cases. In England, New York, Massachusetts, and Virginia,
there was no attempt to contradict the deed; but a resulting trust
was established by showing that the firm paid the money for the
land, and constructed and used the buildings for partnership
purposes. The trust results from operation of law, and like all
the other trusts, must yield to those who · purchase or receive a
mortgage in good faith, but is binding between the parties, and
all other persons, judgment creditors included, who have no in-
terest in the land till after the sale, and only then, if they become
purchasers. The case of Hale *v.* Henrie was correctly decided, so
far as it enables the purchaser at sheriff's sale to recover the prop-

[In the matter of Erb & Matter's Estate.]

erty; but had it been a question of distribution, it never could have received any sanction. The rule, as stated in that case, is clear and unambiguous, and declares that nothing short of a recorded instrument, showing that the property was held for partnership purposes, will avail to raise an equity in the partners or the partnership creditors. The same doctrine is reiterated in Lancaster Bank v. Myley (1 H. 544), and Ridgway, Budd, & Co.'s Appeal (3 H. 177); so that we must take it to be the settled doctrine of Pennsylvania. The consequence follows that if two men purchase land by parol, pay for it with partnership money, erect a factory on it for the business of the firm, and always use it in the prosecution of their partnership affairs, they are presumed to hold as tenants in common; and nothing can repel that presumption but an article or writing placed on record. A judgment against one of them for his private debt will exclude the partnership creditors, whose effects probably built up the property. The heirs of one will inherit one half to the exclusion of the other, on whom, as survivor, are thrown all the debts of the firm; or if he eventually comes on the property by an action of account, he must receive the assets in common with the private creditors of the other partner. This is, as we conceive, contrary to the laws of all the other States, and to those of Great Britain, conflicts with all our decisions in regard to resulting trusts, and is not called for, nor required, by our recording acts. It is against the principles of the common law and the rules of chancery, and is not founded on any statute. *It is court-made law.* There is one case in our books, which appears to conflict with this general doctrine (Overholt's Appeal, 2 Jones, 222). The demand was for an issue to try whether the property did not belong to the firm, and was used for partnership purposes; and also to show that there were partnership debts, entitled to the proceeds of the sale in preference to the private creditors of the partners. This was refused by the court below, because the character of the debts must appear of record, and it could not be shown by parol that a portion of the judgments were rendered for partnership debts. But the Supreme Court reversed the judgment, on the ground that the facts to be ascertained by the issue were proper and important in establishing the right to the money. Why direct an issue to try what the other cases say must appear of record? If the character of the partnership property must be found by a recorded writing, why not bring it into court, and exhibit the matter of record instead of directing an issue? Yet this is a solitary case, standing against three others, and is only mentioned to show that rights of this character are not always recorded. The opinion expressed is more with the view of showing our disapprobation of the Pennsylvania authorities generally, than their application to the present controversy; as the article is drawn in terms to hold as *" tenants in common ;"* and we

have no express and clear evidence, such as the law requires, to reform a writing. Even the state of the partnership business and accounts is left in uncertainty. We must take it that these parties held the kind of estate mentioned in the article. In addition to the authorities cited, Cumming's Appeal (1 Ca. 269) has a strong bearing in support of the auditor's decision. We do not consider that the evidence taken on the second hearing materially changes the rights of the parties. The auditor distributed the money according to the settled law of Pennsylvania, and his report is confirmed.